## BROWN *v.* HELVERING, COMMISSIONER OF INTERNAL REVENUE.

No. 187. Argued December 13, 14, 1933.—Decided January 15, 1934.

*Mr. Arthur B. Dunne,* with whom *Mr. Lloyd M. Robbins* was on the brief, for petitioner.

*Solicitor General Biggs,* with whom *Messrs. Sewall Key, J. P. Jackson,* and *H. Brian Holland* were on the brief, for respondent.

MR. JUSTICE BRANDEIS delivered the opinion of the Court.

An unincorporated concern known as Edward Brown & Sons, of San Francisco, has since 1896 acted as Pacific

Coast General Agent for fire insurance companies.[1] In 1923, Arthur M. Brown conducted the concern alone. In 1925 and 1926, he and his son Arthur M. Brown, Jr. conducted it as partners. The general agent receives as compensation from its principals, among other things, a so-called "overriding commission" on the net premiums derived from business written through the local agents. The question for decision is, how the income of the petitioner, Arthur M. Brown, derived from overriding commissions during the years 1923, 1925 and 1926 should be calculated for purposes of the federal income tax. The Commissioner of Internal Revenue held that in determining income, the gross overriding commissions on business written during the year should not be subjected to any deduction on account of cancellations expected to occur in later years. The taxpayer contends that either the gross overriding commissions should be subjected to such a deduction or that parts of the gross overriding commissions should be allocated as earnings of future years.

---

[1] The duties required of and performed by the general agent are described by the Board of Tax Appeals as follows [22 B.T.A. 681]: "The firm appointed and removed local agents; accepted service of process; adjusted losses under policies; received and acknowledged service of proof of loss; issued, countersigned and canceled policies; received and receipted for premiums, surveyed all risks offered and accepted or rejected the same; represented its principals on the Pacific Board of Fire Underwriters; computed and paid commissions due local agents; ceded or reinsured certain lines of business with treaty or other companies; computed and paid return premiums on canceled policies; secured return of premium on canceled reinsurance; rendered all reports required of its principals by the authorities of political subdivisions in the territory in which it operated; attended to the payment of all license fees and taxes; furnished all necessary printed matter, except policy blanks, to local agents; transferred insurance by endorsement, determined whether its principals should participate in special pools; and generally attended to all the affairs of its principals in the territory in which it operated."

The term net premium as used in providing for overriding commissions, means the gross premium on the business written less the return premium and the net cost of any reinsurance. Fire insurance policies are written for periods of one, three or five years, with the right of cancellation by either party at stipulated rates of premium return. Premiums being payable in advance (subject to the 60 day grace period), a return premium is paid to the policyholder in case of cancellation; and the general agent who receives the premium pays the return premium. The company writing a policy frequently reinsures in another company a part of its contingent liability; and the general agent, who makes the payments for reinsurance, receives, in case of cancellation, a return of a proportionate part of the cost of the cancelled reinsurance. The general agent makes to each principal remittances on monthly balances, crediting itself among other things, with the overriding commissions on premiums receivable, with the return premiums paid and with the net amount paid for reinsurance; and charging itself, among other things, with a proportionate part of any overriding commissions previously credited in respect of any business which has been cancelled during the month. Thus, whenever there is a cancellation and a return or credit of a portion of the premium and of the cost of any reinsurance, the general agent returns to the company or charges itself with a corresponding portion of the overriding commission.

Prior to 1923, overriding commissions on new business were accounted income of the year in which the business was written; and refunds of overriding commission on account of cancellations were accounted expenses of the year of cancellation. The books of the general agent have at all times been kept on the accrual basis. Although no change was made in the method of accounting between the general agent and its principals, there was

set up on the books of the concern at the close of 1923, for the first time, a liability account entitled "Return Commission." In it was recorded an estimate of the liability expected to arise out of the general agent's obligations to refund to the companies a proportionate part of the overriding commission received because of cancellations which it was expected would occur in future years. The estimate was based on the experience of the preceding five years. Thus, on the books, the year's income from overriding commissions was reduced by the amount of refunds which, it was estimated, would have to be made in future years. This changed method of accounting has been followed ever since; and the difference in the method of calculating the general agent's income has been reflected in the returns made by Brown of his taxable income.

The ratio of cancellations to premiums receivable having been 22.38 per cent. for the five years ending in 1923, the gross income from overriding commissions on business written in 1923, amounting to $236,693.31, was subjected on the books to a deduction of $52,971.96; and this amount was credited to the "Return Commission" account. Similarly, at the close of each of the years 1924, 1925 and 1926 the credit balance in the "Return Commission" account was adjusted so that it bore the same relation to the overriding commissions on business written during the year as the total fire insurance premiums cancelled in the preceding five-year period bore to the gross premiums on business written during those years. The ratio of cancellations for the five years ending in 1925 having been 21.55 per cent., and the total overriding commissions $244,597.88, a deduction of $3,292.98 was made, representing the net addition to the "Return Commission" account in 1925. The ratio of cancellations to premiums for the five-year period ending in 1926 having been 21.13 per cent., and the total overriding com-

missions $258,677.57, a deduction was made of $1,947.77 representing the net addition to the "Return Commission" account in 1926.[2]

In making his federal income tax return for the year 1923, 1925 and 1926, Brown claimed as deductions the benefit of the credits so made to the "Return Commission" account. The Commissioner of Internal Revenue disallowed these deductions; and accordingly assessed to Brown for 1923 a deficiency of $17,923.03; for 1925 a deficiency of $1,520.19; and for 1926 a deficiency of $944.30.[3] The Commissioner's determinations were sustained by the Board of Tax Appeals, 22 B.T.A. 678; and its order was affirmed by the Circuit Court of Appeals: 63 F. (2d) 66. Certiorari was granted by this Court because of alleged conflict with the decision of Circuit Court of Appeals for the Fourth Circuit in *Virginia-Lincoln Furniture Corp.* v. *Commissioner of Internal Revenue,* 56 F. (2d) 1028, and other cases.

*First.* The Commissioner properly disallowed the deductions on account of the credits to the "Return Com-

---

[2] For the year 1923, the deduction of $52,971.96, the entire amount set up as a reserve, is in dispute. Similar figures were set up for the years 1924, 1925, and 1926; but actual cancellations for each of these later years were charged not against overriding commissions, but against the return commission account as set up and carried over from the preceding year. Thus the amount in dispute for each of the years 1925 and 1926 is not the entire deduction from overriding commissions as made by the general agent, but the difference between that figure and the amounts charged to the "Return Commission" account; or, in other words, the net adjustment or addition to the account. (There was no addition for 1924.)

Judge Wilbur concurred specially below taking the ground, among others, that the result of this method was a claim in 1923 for deductions both of the entire reserve and of actual cancellations during the year.

[3] The amount of the deficiency for each year was affected by an additional claim as a deduction of $3,000 which was disallowed. It is not here in question.

mission " account. Under the Revenue Acts taxable income is computed for annual periods. If the accounts are kept on the accrual basis the income is to be accounted for in the year in which it is realized even if not then actually received; and the deductions are to be taken in the year in which the deductible items are incurred. What is taxable as income is provided by the Revenue Act of 1921, c. 136, 42 Stat. 227, 237, 239.[4] Section 212 (a) declares " That in the case of an individual the term ' net income ' means the gross income as defined in section 213, less the deductions allowed by section 214." Section 214 (a) declares " That in computing net income there shall be allowed as deductions: (1) All the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business." The only relevant deductions allowable by law are those provided for in § 214.; and the burden rests upon the taxpayer to show that he was entitled to the deduction claimed. *Reinecke* v. *Spalding*, 280 U.S. 227, 232.

The overriding commissions were gross income of the year in which they were receivable. As to each such commission there arose the obligation—a contingent liability—to return a proportionate part in case of cancellation. But the mere fact that some portion of it might have to be refunded in some future year in the event of cancellation or reinsurance did not affect its quality as income. Compare *American National Co.* v. *United States,* 274 U.S. 99. When received, the general agent's right to it was absolute. It was under no restriction, contractual or otherwise, as to its disposition, use or enjoyment. Compare *North American Oil Consolidated* v. *Burnet,* 286 U.S.

---

[4] Sections 212, 213 and 214 of the Revenue Act of 1924, c. 234, 43 Stat. 253, 267–270, and the corresponding sections of the Revenue Act of 1926, c. 27, 44 Stat. 9, 23–27, contain provisions identical with those quoted above, except that § 206 of those acts is also referred to as defining deductions.

417, 424.[5] The refunds during the tax year of those portions of the overriding commissions which represented cancellations during the tax year had, prior to the tax return for 1923, always been claimed as deductions; and they were apparently allowed as " necessary expenses paid or incurred during the taxable year." The right to such deductions is not now questioned. Those which the taxpayer claims now are of a very different character. They are obviously not " expenses paid during the taxable year." They are bookkeeping charges representing credits to a reserve account.

These charges on account of credits to the " Return Commission " reserve account are claimed as deductions on the ground that they are expenses " incurred," " during the taxable year." It is true that where a liability has " accrued during the taxable year " it may be treated as an expense incurred; and hence as the basis for a deduction, although payment is not presently due; *United States* v. *Anderson,* 269 U.S. 422, 440, 441; *American National Co.* v. *United States,* 274 U.S. 99; *Aluminum Castings Co.* v. *Routzahn,* 282 U.S. 92; and although the amount of the liability has not been definitely ascertained. *United States* v. *Anderson, supra.*[6] Compare *Continental Tie & Lumber Co.* v. *United States,* 286 U.S. 290, 296. But no liability accrues during the taxable year on account of cancellations which it is expected may occur in future years, since the events necessary to create the liability do not occur during the taxable year. Except as otherwise specifically provided by statute, a liability does not accrue as long as it remains contingent. *Weiss* v. *Wiener,* 279 U.S. 333, 335; *Lucas* v. *American Code Co.,* 280 U.S. 445, 450, 452; compare *New York Life Ins. Co.*

---

[5] See also *Vang* v. *Lewellyn,* 35 F. (2d) 283.

[6] See also *Uncasville Mfg. Co.* v. *Commissioner,* 55 F. (2d) 893, 895; *Ocean Accident & Guarantee Corp.* v. *Commissioner,* 47 F. (2d) 582. Compare *Commissioner* v. *Old Dominion S.S. Co.,* 47 F. (2d) 148.

v. *Edwards*, 271 U.S. 109, 116; *Ewing Thomas Co.* v. *Mc-Caughn*, 43 F. (2d) 503; *Highland Milk Condensing Co.* v. *Phillips*, 34 F. (2d) 777.

The liability of Edward Brown & Sons arising from expected future concellations was not deductible from gross income because it was not fixed and absolute. In respect to no particular policy written within the year could it be known that it would be cancelled in a future year. Nor could it be known that a definite percentage of all the policies will be .cancelled in the future years. Experience taught that there is a strong probability that many of the policies written during the taxable year will be so cancelled. But experience taught also that we are not dealing here with certainties. This is shown by the variations in the percentages in the several five-year periods of the aggregate of refunds to the aggregate of overriding commissions.[7]

Brown argues ·that since insurance companies are allowed to deduct reserves for unearned premiums which may have to be refunded, he should be allowed to make the deductions claimed as being similar in character. The simple answer is that the general agent is not an insurance company; and that the deductions allowed for additions to the reserves of insurance companies are technical in character and are specifically provided for in the Revenue Acts. These technical reserves are required to be made by the insurance laws of the several States. See *Maryland Casualty Co.* v. *United States*, 251 U.S. 342, 350; *United States* v. *Boston Ins. Co.*, 269 U.S. 197; *New York Life Ins. Co.* v. *Edwards*, 271 U.S. 109. The "Return Commission" reserve here in question was voluntarily established. Only a few reserves voluntarily established

---

[7] The taxpayer testified: From my experience in the insurance business, I would say that approximately the general ratio of cancellations to business written, depending on the year, runs between 20% and 25%.

as a matter of conservative accounting are authorized by the Revenue Acts. Section 214 mentions only the reserve for bad debts (in the discretion of the Commissioner), provided for in paragraph 7; those for depreciation and depletion, provided for in paragraphs 8 and 10; and the special provision concerning future expenses in connection with casual sales of real property, provided for in paragraph 11 of § 214 as amended by the Revenue Act of 1926. 26 U.S.C. § 955. Many reserves set up by prudent business men are not allowable as deductions. See *Lucas v. American Code Co.*, 280 U.S. 445, 452.[8]

Brown argues also that the Revenue Acts required him to make his return " in accordance with the method of accounting regularly employed in keeping the books ";[9] and that in making the deductions based on the credits to " Return Commission " account, he complied with this requirement. The Commissioner's oft-quoted[10] instruction of January 8, 1917 (No. 2433, 19 Treas. Dec. Int. Rev. 5) is relied upon:

" In cases wherein, pursuant to the consistent practice of accounting of the corporation . . . corporations set up and maintain reserves to meet liabilities, the amount of which and the date of payment or maturity of which is not definitely determined or determinable at the time the liability is incurred, it will be permissible for the corpora-

---

[8] Compare *Barde Steel Products Corp. v. Commissioner*, 40 F. (2d) 412, 416; *Spring Canyon Coal Co. v. Commissioner*, 43 F. (2d) 78.

[9] Section 212 (b). The net income shall be computed . . . in accordance with the method of accounting regularly employed in keeping the books of such taxpayer; but if . . . the method employed does not clearly reflect the income, the computation shall be made upon such basis and in such manner as in the opinion of the Commission does clearly reflect the income.

[10] *United States v. Anderson*, 269 U.S. 422; *American National Co. v. United States*, 274 U.S. 99, 101; *Niles Bement Pond Co. v. United States*, 281 U.S. 357, 359; *Aluminum Castings Co. v. Routzahn*, 282 U.S. 92, 98.

tions to deduct from their gross income the amounts credited to such reserves each year, provided that the amounts deductible on account of the reserve shall approximate as nearly as can be determined the actual amounts which experience has demonstrated would be necessary to discharge the liabilities incurred during the year and for the payment of which additions to the reserves were made."

The accrual method of accounting had been regularly employed by Edward Brown & Sons before 1923, but no "Return Commission" account had been set up. Moreover, the method employed by the taxpayer is never conclusive. If in the opinion of the Commissioner it does not clearly reflect the income, "the computation shall be made upon such basis and in such manner," as will, in his opinion, do so. *United States* v. *Anderson*, 269 U.S. 422, 439; *Lucas* v. *American Code Co.*, 280 U.S. 445, 449; *Lucas* v. *Ox Fibre Brush Co.*, 281 U.S. 115, 120; compare *Williamsport Wire Rope Co.* v. *United States*, 277 U.S. 551; *Lucas* v. *Structural Steel Co.*, 281 U.S. 264.[11] In assessing the deficiencies, the Commissioner required in effect that the taxpayer continue to follow the method of accounting which had been in use prior to the change made in 1923. To so require was within his administrative discretion; compare *Bent* v. *Commissioner*, 56 F. (2d) 99.

*Second.* The Board of Tax Appeals did not err in refusing to allocate to future years part of the overriding commissions on business written during the taxable year. Brown urges that the overriding commission is compensation for services rendered throughout the life of the policy; that the compensation to be rendered in later years cannot be considered as earned until the required services have been performed; and that the Revenue Acts con-

---

[11] See also *Industrial Lumber Co.* v. *Commissioner*, 58 F. (2d) 123; *Jennings* v. *Commissioner*, 59 F. (2d) 32.

template that where books are kept on the accrual basis, the income shall be accounted for as it is earned. He suggests, therefore, as an alternative method of ascertaining the income, that the commissions on each year's writing be prorated over the life of the policies.

Under this alternative proposal, the practice of making deductions prevailing prior to 1923 would remain unchanged; but the method of ascertaining the gross income of the taxable year would be subjected to a far-reaching change. The proposal is that all policies be deemed to have been written on July 1; that of the overriding commission on one-year policies, one-half should be returned as income of the year in which the policy was written, the other half as income of the next year; that of the commissions on three-year policies, one-sixth should be returned as income of the year in which the policy was written, one-third as the income of each of the next two years and one-sixth as income of the fourth year; and that the commission on five-year policies, one-tenth should be returned as income of the first year, one-fifth as income of each of the next four years, and one-tenth as income of the sixth year.

This proposed alternative method of computing the income from overriding commissions was not employed by Edward Brown & Sons either before or after 1923. Moreover, the Board concluded that there " is no proof that the overriding commissions contain any element of compensation for services to be rendered in future years." The whole of the overriding commissions has at all times been treated as income of the year in which the policy was written. The Commissioner was of opinion that the method of accounting consistently applied prior to 1923 accurately reflected the income. He was vested with a wide discretion in deciding whether to permit or to forbid a change. Compare *Bent* v. *Commissioner*, 56 F. (2d) 99. It is not the province of the court to weigh and determine

the relative merits of systems of accounting. *Lucas v. American Code Co.,* 280 U.S. 445, 449.

The deductions here claimed, not being authorized specifically either by the Revenue Acts, or by any regulation applying them, were properly disallowed. So far as the decision in *Virginia-Lincoln Furniture Corp.* v. *Commissioner,* 56 F. (2d) 1028, may be inconsistent with this opinion, it is disapproved.

*Affirmed.*