WILLIAM M. DAVEY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 48550.   Promulgated May 31, 1934.

*Frank Mergenthaler, Esq.*, and *G. O. Carlson, C.P.A.*, for the petitioner.

*C. H. Curl, Esq.*, for the respondent.

OPINION.

MARQUETTE: The petitioner relies upon four points to support his position: (1) That the arrangement entered into between himself, on the one hand, and Bryson and others, on the other, established, in fact, the relationship of debtor and creditor; (2) that the alleged profit derived from the transactions was deferrable for income tax

purposes; (3) that where a taxpayer consistently reports his income in accordance with a particular plan which reflects the true income, he should be permitted to continue to report it upon that basis; and (4) that where a doubt arises in the application of a taxing statute, the doubt should be resolved in favor of the taxpayer. Given facts which would warrant the application of points (3) and (4), we would have no quarrel as to the correctness of the points stated herein, but we are of opinion that the facts herein do not warrant the conclusions stated in those points. The decision of the case rests primarily upon points (1) and (2).

As appears from the findings of fact, petitioner purchased mortgage securities at a discount which he later sold to the Brysons and others at a discount which would net him a profit. As a condition of the sales, petitioner agreed, in case of default in payments due or trouble with collections, either to replace the securities sold with other securities of equal value, or to repurchase the same at the same rate of discount at which they were sold to his vendees. Upon 90 days' notice the vendees could require petitioner to repurchase all securities sold to them, and, upon like notice, petitioner could repurchase from his vendees. We see nothing in this situation which at all resembles the relation of debtor and creditor. The agreement purports to sell and the conditions therein are all conditions subsequent. Whether the contingencies provided for will ever occur is problematical. Upon the sale of the securities the purchase price becomes the property of the petitioner, without restriction upon its use, and any gain derived in the transaction is income at that time. The petitioner claims the right to report this gain as amounts are paid to his vendees upon the security sold. This, in effect, is not different from a reserve to take care of the contingent liability to repurchase. While such a reserve may be good accounting practice, it is not permitted by the taxing statute, and such income may not be deferred to await the possibility of the happening of the contingency. *Uvalde Co.*, 1 B.T.A. 932. Nor do we think the method of accounting adopted by petitioner reflects true income. Income taxes are laid upon an annual basis, and here the petitioner derived the gain from his capital which constituted gross income in the year in which received, and income is not truly reflected by deferring a part thereof to future years. This proceeding does not differ in principle from that of *Browne* v. *Commissioner*, 22 B.T.A. 678; affd., 63 Fed. (2d) 66; 291 U.S. 193. In that case Edward Browne & Sons acted as Pacific Coast general agent for fire insurance companies. The general agent received as compensation a so-called "overriding commission" on the net premiums derived from business written through local agents. The Commissioner held that in

determining income the gross overriding commissions on business written during the year should not be subjected to any deductions on account of cancellations subject to occur in later years. The petitioner contended that either the gross overriding commissions should be subjected to such a deduction or that parts of gross overriding commissions should be allocated as earnings of future years. The Supreme Court stated:

The overriding commissions were gross income of the year in which they were receivable. As to each such commission there arose the obligation—a contingent liability—to return a proportionate part in case of cancellation. But the mere fact that some portion of it might have to be refunded in some future year in the event of cancellation or reinsurance did not affect its quality as income. Compare *American National Co.* v. *United States*, 274 U.S. 99. When received, the general agent's right to it was absolute. It was under no restriction, contractual or otherwise, as to its disposition, use or enjoyment. Compare *North American Oil Consolidated* v. *Burnet*, 286 U.S. 417, 424. The refunds during the tax year of those portions of the overriding commissions which represented cancellations during the tax year had, prior to the tax return for 1923, always been claimed as deductions; and they were apparently allowed as " necessary expenses paid or incurred during the taxable year." The right to such deductions is not now questioned. Those which the taxpayer claims now are of a very different character. They are obviously not " expenses paid during the taxable year." They are bookkeeping charges representing credits to a reserve account.

We think this case is decisive of the proceeding before us and we therefore hold that no part of the gain derived from the sale of securities herein may be deferred to future years but is income in the year of its receipt by the petitioner.

*Judgment will be entered for the respondent.*