C. H. Mead Coal Company, Corporation (Parent), Petitioner, *v.* Commissioner of Internal Revenue, Respondent.

Docket No. 69951. Promulgated September 19, 1934.

*Frederick L. Thomas, Esq.*, and *Jackson D. Altizer, Esq.*, for the petitioner.

*Arthur Carnduff, Esq.*, and *Stanley B. Pierson, Esq.*, for the respondent.

OPINION.

Murdock: The Commissioner determined a deficiency of $6,196.37 in the petitioner's income tax for 1930. The parties are now prepared to settle four of the five issues raised. They agree that a depreciation question and a loss question are settled by a recent decision of the Circuit Court in the case of this same taxpayer. The only question for decision is whether or not the Commissioner erred in including in income for 1930, $25,000 received in that year from

the Lillybrook Coal Co. under a written agreement for the mining of coal. There is no dispute about the facts relating to this issue.

The petitioner and the Mead Smokeless Coal Co. are affiliated corporations and as such filed a consolidated return for 1930. The Mead Smokeless Coal Co. had leased certain coal land situate in Raleigh County, West Virginia. The Mead Smokeless Coal Co., on April 7, 1930, with the consent of the owner, subleased a portion of the coal land to the Lillybrook Coal Co. The latter was operating adjoining property and intended to place no property upon the leased premises but to mine from its adjoining property. The leased premises contained about 850,000 net tons of coal. The Lillybrook Coal Co. was required to mine at least 500,000 tons of coal from the property within 10 years. It agreed to pay to the owner the royalties per ton specified in the original lease " and in addition thereto to pay to Mead Smokeless Coal Co. a tonnage royalty of five cents (5¢) per ton for each and every net ton of two thousand (2,000) pounds of coal mined by Lillybrook Coal Co. from the " premises. The contract further provided:

Lillybrook Coal Company has this day paid unto Mead Smokeless Coal Company as an advance on account of the tonnage royalty of five cents (5¢) per net ton herein provided to be paid by Lillybrook Coal Company to Mead Smokeless Coal Company the sum of Twenty Thousand Dollars ($20,000.00) the receipt whereof is hereby acknowledged, the said Lillybrook Coal Company further agrees to pay unto the said Mead Smokeless Coal Company as a further advance on such tonnage royalty the additional sum of Five Thousand Dollars ($5,000.00) on the 15th day of April, 1930, but the lessee, Lillybrook Coal Company, is hereby given and granted the right and privilege of mining from said Fire Creek seam or vein of coal free from the payment of such tonnage royalty of five cents (5¢) per net ton to Mead Smokeless Coal Company a sufficient amount of coal, to-wit, 500,000 net tons, to reimburse Lillybrook Coal Company for the payment of the said sums of Twenty Thousand Dollars ($20,000.00) and Five Thousand Dollars ($5,000.00) respectively, in advance on account of the said tonnage royalty of five cents (5¢) per net ton, and after it shall have mined said 500,000 net tons of coal to reimburse itself as aforesaid to further pay five cents (5¢) per net ton to Mead Smokeless Coal Company for any additional coal mined in excess of the said 500,000 net tons of coal.

The Mead Smokeless Coal Co. was relieved of all payments to the owner with respect to the portion of the property leased to the Lillybrook Coal Co.

The Lillybrook Coal Co. paid to the Mead Smokeless Coal Co. in 1930, $25,000, as provided in the lease, but mined no coal from the property during that year. The Mead Smokeless Coal Co., which keeps its books and reports its income on an accrual basis, credited the payment to advanced royalties and reported no part of the $25,000 as income for 1930. In later years, as coal was mined, it charged 5 cents per ton against the advanced royalties account and reported the total charges for each year as income. The Commissioner added the $25,000 to the income reported for 1930.

The petitioner contends that the payment of $25,000 made in 1930 to its subsidiary, the Mead Smokeless Coal Co., was not income to a taxpayer on an accrual basis until earned at the rate of 5 cents per ton as the coal was removed, no coal was removed in 1930, no part of the payment representing advanced royalties was earned in 1930, and consequently no part of the payment was income for that year. A cash method of bookkeeping takes items into income as the cash is received, whereas in an accrual method items are sometimes taken into income prior to their actual receipt. It does not follow, however, that on an accrual method receipt is never important and accrual as income can be delayed after actual receipt. If there are occasions for such a delay, this is not one of them. Here the Mead Smokeless Coal Co. received the cash in 1930. Its right to the money was absolute. "It was under no restriction, contractual or otherwise, as to its disposition, use or enjoyment." *Brown* v. *Helvering*, 291 U.S. 193. The amount was over and above the amount payable to the owner. Thus it was like the overriding commissions in the *Brown* case, *supra*, which the Court held were income when received. But unlike the commissions in the *Brown* case, no part of this $25,000 would ever have to be returned under any circumstances. This income was realized in 1930 and there was no reason to delay reporting it for income tax purposes. Cf. *Thomas D. Taylor*, 17 B.T.A. 1107; affd., 51 Fed. (2d) 915; certiorari denied, 284 U.S. 689. Actual mining of the coal was not necessary to render this item accruable as income. Cf. *Morris-Poston Coal Co.* v. *Commissioner*, 42 Fed. (2d) 620. The Commissioner did not accept the bookkeeping method of reporting this payment. That method was not conclusive and in this instance failed to clearly reflect income. Cf. *Automobile Underwriters, Inc.*, 19 B.T.A. 1160.

*Decision will be entered under Rule 50.*