S. B. HEININGER, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 106518. Promulgated June 10, 1942.

*Samuel W. Witwer, Jr., Esq.,* for the petitioner.
*D. A. Taylor, Esq.,* for the respondent.

### OPINION.

DISNEY: The present proceeding involves income taxes for the calendar years 1937 and 1938. The Commissioner determined deficiencies in the respective amounts of $10,816.62 and $4,359.39. The

petitioner urges error as to the major portion of the amounts. The questions presented are whether certain amounts received by the petitioner were properly added to gross income, and whether certain attorney fees were deductible as ordinary and necessary expenses of business. The income tax returns involved were filed with the collector for the first district of Illinois at Chicago, Illinois. The greater portion of the facts have been stipulated, as follows:

1. The petitioner, S. B. HEININGER, was a resident of Chicago, Illinois, at the time of the filing of the petition herein. Petitioner now resides at Athens, Wisconsin. The returns for the periods here involved were filed with the Collector of Internal Revenue for the First District of Illinois, at Chicago, Illinois.

2. On December 3, 1940, the respondent mailed to petitioner a notice of deficiency in federal income taxes for the years 1937 and 1938, a true and correct copy of which is attached as Exhibit A to the petition herein.

3. The taxes in controversy are income taxes for the calendar years 1937 and 1938, and the deficiencies asserted are in the amounts of $10,816.62 and $4,359.39, respectively.

4. During the years from about 1926 to 1939, the petitioner was a licensed dentist in the State of Illinois. His principal work since about 1932 was the making of artificial dentures, commonly known as false teeth, for customers living outside of the City of Chicago who did not personally visit petitioner's office. Before said dentures were made for a customer, petitioner required from and there was forwarded to him from such customer a payment of $2.00 generally designated by the petitioner and hereinafter for convenience referred to as "deposit". Said dentures, when completed for said nonresident customers, were mailed or shipped to them, C. O. D., for the amount of petitioner's respective charges less the $2.00 "deposit". For various reasons some of the "deposits" were returned to said clients and the dentures ordered by them were not furnished by the petitioner. For years prior to the year 1937, the petitioner consistently followed the practice of entering said "deposits" in his books of account as gross receipts when received, against which he entered as offsets thereto when returned the amounts of the "deposits" returned, and reflected the difference as gross income in his income tax returns for those years.

5. Petitioner's books of account for the years 1937 and 1938 recorded aforesaid "deposits" and said "deposits" returned and gross income as set forth in paragraph 4, supra. On December 31, 1937, the petitioner credited to a "deposit account" an item of $20,593.60 representing "deposits" on orders which had not been filled or completed. Of said amount, $3,656.60 represented "deposits" received during the period prior to January 1, 1937, and $16,937.00 represented "deposits" received during the year 1937. Said item of $20,593.60 was deducted from petitioner's gross income arrived at as set forth, supra, in his income tax return filed for the year 1937. On December 31, 1938 the petitioner credited to said "deposit account" an item of $6,900.63 representing "deposits" received during the year 1938. During the year 1938 the petitioner completed, mailed and/or shipped dentures on which deposits in the amount of $13,823.94 had been made in prior years and which were included in the said item of $20,593.60. On December 31, 1938 said "deposit account" was charged with said item of $13,823.94 and gross receipts for 1938 were increased in a like amount, leaving in said "deposit account" as of January 1, 1939 the amount of $13,670.29 ($20,593.60 minus $13,823.94 plus $6,900.63) representing deposits on

orders for dentures unfilled as of that date. In petitioner's income tax return for said year 1938 the aforesaid item of $13,823.94 was included in gross income and the said item of $6,900.63 was deducted from gross income.

In the respondent's final determination of the petitioner's tax liability for said year 1937, as evidenced by his notice of deficiency, a copy of which is attached to the petition herein as Exhibit A, the respondent disallowed as a deduction the said item of $3,656.60 and included in gross income the said item of $16,937.00. The petitioner concedes that the respondent's action in disallowing the said deduction of $3,656.60 was proper and in the final determination herein of petitioner's tax liability for the said year, said deduction should be disallowed.

In the respondent's final determination of the deficiency herein for the said year 1938, as evidenced by his notice of deficiency, a copy of which is attached to the petition herein as Exhibit A, the respondent eliminated from gross income the said item of $13,823.94 and included in petitioner's gross income the said item of $6,900.63.

6. Petitioner's income tax returns were at all times filed on the cash receipts and disbursements basis. The petitioner never applied for nor received permission from the Commissioner of Internal Revenue to change his method of accounting or filing his income tax returns employed for years prior to 1937.

7. On September 22, 1937 a citation was issued by the Solicitor of the Post Office Department, charging that petitioner was engaged in conducting a scheme for obtaining funds through the mails by means of false and fraudulent practices, in violation of 39 U. S. C. A., Sections 259 and 732. Shortly thereafter petitioner appeared before the United States Post Office Department, answered said charges and employed attorneys to render legal services to petitioner in resisting the issuance of the so-called "Fraud Order" under said Statute. During 1937 petitioner paid attorneys' fees and other legal expenses in connection with said proceedings, amounting to $7,069.99; said payments were reasonable in amount.

8. On February 19, 1938, and after a hearing under the aforesaid citation, the Postmaster General of the United States issued a so-called "Fraud Order," forbidding the Postmaster at Chicago, Illinois, to pay any money orders drawn to the order of petitioner, and instructing said Postmaster to return all mail addressed to the petitioner to the senders, marked "Fraudulent". Thereafter, on February 25, 1938, petitioner filed suit in the District Court of the United States for the District of Columbia against James A. Farley, Postmaster General, and on that date said Court entered an order directing the Postmaster General to hold all mail addressed to petitioner until the further order of the Court.

9. On June 6, 1938, the District Court of the United States for the District of Columbia granted to petitioner a permanent injunction, restraining the Postmaster General of the United States from enforcing the aforesaid "Fraud Order" or otherwise proceeding in accordance with the terms of said "Fraud Order". Thereafter the Postmaster General appealed said case to the Court of Appeals for the District of Columbia, and on April 17, 1939 that Court reversed the Order of the District Court for the District of Columbia and remanded the cause with instructions to dissolve the injunction and to dismiss the Bill of Complaint. The opinion of the said Court of Appeals is reported at 105 Fed. 2d 79, of which this Board may take judicial notice. Thereafter, in the October Term, A. D. 1939, petitioner applied to the Supreme Court of the United States for a Writ of Certiorari to review the judgment of the United States Court of Appeals, which Petition for Certiorari was denied.

10. A copy of the Bill of Complaint filed by the petitioner in said District Court including a copy of the aforesaid "Fraud Order" attached thereto as "Exhibit A"; a copy of the Answer thereto; a copy of the Restraint Order entered

by the said District Court; a copy of the Court's opinion; and a copy of the Court's order of permanent injunction are set forth in "Exhibit A", as labeled therein, which is attached hereto and made a part hereof.

11. Pursuant to mandate of the aforesaid Court of Appeals, the said District Court entered an order dissolving the aforesaid injunction and dismissing the aforesaid Bill of Complaint. Said order is now final and in full force and effect.

12. During the year 1938 petitioner paid to attorneys for legal services in prosecuting his injunction suit in the District Court of the United States for the District of Columbia, and defending the aforesaid appeal of the Postmaster General to the Circuit Court of Appeals for the District of Columbia, and in applying to the Supreme Court of the United States for Writ of Certiorari, fees and legal expenses aggregating $29,530.56; said payments were reasonable in amount.

We find the facts to be as stipulated. In addition, from evidence adduced, we further find:

The petitioner on receiving an inquiry by mail customarily mailed a portion of wax called "first impression" material with an order blank and catalogue of prices and instructions as to how to use the wax. The customer would return it with an impression of the teeth, and was then furnished with material for a second impression. If this was satisfactory, the upper plate was made. If not satisfactory, further material was sent to get a better impression. If upon a fourth effort a satisfactory impression was not secured the procedure was discontinued and the deposit mailed back to the customer. If finally satisfactory, the upper plate was finished and sent c. o. d. for the price of the upper plate only, with wax for an impression for the lower plate, which in like manner was finished and sent c. o. d. The petitioner's gross receipts from the dental business in the year 1937 were $287,582.82 and in 1938 were $150,168.27. Refunds made in 1938 were $27,349 and for the year 1937 were $38,062.08. The petitioner had only one bank account, upon which he drew to pay operating expenses and refunds which were made whenever customers asked for them, whether before or after the completion of the dentures, if the customer was not satisfied. This was pursuant to a written statement included in the order blank used, to the effect that satisfaction was guaranteed or the customer's money would be refunded after a trial of the teeth of 60 days.

1. We first consider the question whether the Commissioner erred in including in petitioner's gross income amounts received by petitioner as deposits upon dental work ordered from him by mail, under a written agreement, embodied in the order blank used by the customer, that his money would be refunded in case of dissatisfaction. The petitioner of course has the burden of showing respondent's action to be error. Petitioner in substance contends that there was, in each of the taxable years, when the deposits were received, no certainty that the contracts would be completed, perhaps particularly in 1938, in September of which year the Post Office citation was issued, that the money had

not been earned, and the deposit was earnest money held in suspense; therefore the amounts did not constitute income. The respondent on his part in effect argues that the money had been received without restriction as to disposition or use, and was therefore gross income.

We note at once that one element of the petitioner's argument has no factual basis in the record: though he argues, on brief, that in the taxable year "As yet, he had done no work and performed no services whereby he earned the deposit", the record does not bear out such statement. Indeed, immediately prior to the above quoted language, he had stated that nothing had been done prior to the close of the year "other than to secure either a preliminary or final impression or to commence preparation of the first plate"—which shows on its face that at least some work had been done, something earned. This may well have reasonably been as much as or more than the $2 deposit here involved. The record does not tell us what proportion that amount bore to the fee for the finished product. Moreover, the evidence, by stipulation, is simply that on December 31, 1937, the deposits credited to the "deposit account" by the petitioner (and which were not returned as gross income by him) were "on orders which had not been filled or completed." Likewise the amounts left in the deposit account on December 31, 1938, were those "representing deposits on orders for dentures unfilled as of that date." An exhibit refers to the deposits on hand at the close of each year as "on orders not completed as yet." This constitutes all the evidence on the point. Obviously this is no showing that the $2 deposits had not been earned during the year, merely because orders had not been "filled" or "completed." The burden being upon the petitioner, we hold that no showing is made that the deposits had not been earned during the respective taxable years. Yet the petitioner seems to recognize this point of fact as decisive, for on reply brief he says:

> The question before this Board is whether petitioner did anything in the respective years of receipt whereby he became entitled to the deposits, as *earnings*. Here the facts operated to place the status of the deposits, *as earnings*, in suspense throughout the respective years of receipt. * * *

Shortly after this appear the statements quoted above to the effect that the deposits had not been earned at the end of the year. We consider it clear that there is no showing that the deposits had not been earned. The only question, then, is the effect of an agreement to return them in case of dissatisfaction. That agreement covered not only the $2 deposits, but the entire amount received, and no claim is made that the petitioner's argument applies to more than the $2 deposits, the balance being returned as income. The argument could, when limited, as we have limited it, to the effect of the written agreement to return in case of dissatisfaction, be applied to petitioner's entire income with equal logic.

The petitioner cites *Webb Press Co., Ltd.*, 3 B. T. A. 247. That case involved a contract for sale of a cotton compress, where title was retained until acceptance, which did not occur until the next year, so that we held the money received in advance to be income in the following year. The case is of little help here, where there is no title retention and no question of acceptance. Here the customer merely has a right to return of his money if dissatisfied. *Bourne* v. *Commissioner*, 62 Fed. (2d) 648, also cited, is a similar case, where there was advance payment or "earnest money" on a contract to sell real estate, where title did not pass and deed was not delivered until a later year, in which it was held the payment constituted income. We think such cases do not control here, where there is found only agreement to refund, not a retention of title or a contract not accepted. The same in effect is true of *Virginia Iron, Coal & Coke Co.* v. *Commissioner*, 99 Fed. (2d) 919; and *Reginald Denny*, 33 B. T. A. 738, involved a loan, neither paid nor received as income. Here, we think, the $2 was both so paid and received. It was deposited by the petitioner in his only bank account, subject to his check and disposition, and, in our opinion, it was, as we said in *D. H. Byrd*, 32 B. T. A. 568, 572, "subject only to an unliquidated contingent liability." It was received "under a claim of right and without restriction as to its disposition." *North American Oil Consolidated* v. *Burnet*, 286 U. S. 417; *Brown* v. *Helvering*, 291 U. S. 193. The petitioner seeks to distinguish these two cases, cited by the respondent, by the suggestion that there was no earning in the taxable year. We have above noted that there is no such proof in the record. The contract to refund was in effect that this would be done if there was dissatisfaction after a trial of 60 days. Such agreement, in our opinion, does not demonstrate that gross income does not include money received upon the contract. That the petitioner might discontinue business because of the fraud order does not require a different conclusion. On this point the respondent is not shown to have erred.

2. Was there error in refusing deduction of attorney fees paid in connection with the fraud order issued by the Postmaster General and finally unsuccessful effort to obtain a permanent injunction against it? The respondent cites that line of cases which holds, in sum, that expense for attorney fees is not ordinary and necessary if paid to defend, unsuccessfully, a criminal case, where there is conviction, or expense of paying fines. The petitioner seeks to distinguish the situation herein from that involved in such cases, on the ground that here remedies afforded him by the law were asserted, and that there was no judicial determination of wrongdoing or admission of illegality. Here the Solicitor of the Post Office Department issued a citation for fraud order, under a

statute so authorizing if he has evidence satisfactory to him that any person is engaged in conducting any scheme or device for obtaining money or property through the mails by means of false or fraudulent pretenses, representations, or promises. Petitioner unsuccessfully expended money in 1937 for attorney fees in resisting the citation issued. The Postmaster General in 1938 issued the fraud order, the petitioner secured a permanent injunction in the United States District Court against the order, but upon appeal there was reversal, the Circuit Court of Appeals specifically holding that the sole question before it was whether there was substantial evidence before the Postmaster General warranting the issuance of the fraud order, that his conclusion was presumptively correct, that the judgment of the court could not be substituted for that of the Postmaster General, and that there was substantial evidence before the Postmaster General; therefore the reversal. In 1938 the petitioner expended moneys for attorney fees to secure the injunction, and to defend the appeal and unsuccessfully apply to the Supreme Court of the United States for certiorari. The amounts expended are stipulated to be reasonable. Are they allowable as ordinary and necessary expense of trade or business?

After careful consideration of this somewhat novel question we have come to the conclusion that the petitioner is not entitled to the deduction claimed. *National Outdoor Advertising Bureau* v. *Helvering*, 89 Fed. (2d) 878, in our opinion governs this case. There a bill in equity was filed by the Attorney General of the United States to enjoin certain matters which he thought unlawful. A consent decree in equity issued forbidding the acts, but not finding that they had been committed. The Board of Tax Appeals considered that, since there was no evidence of commission of criminal acts and since the decree had been directed to acts in the future, expenses incurred in defense of the suit should be deducted. Upon appeal the Circuit Court, reversing the Board, said:

\* \* \* If it is never necessary to violate the law in managing a business, it cannot be necessary to resist a decree in equity forbidding violations, except in cases where an injunction is unjustified. \* \* \*

Herein also we find proceedings not under the criminal statutes, the first, resistance to a "fraud order" citation by the Postmaster General, and the second, an injunction proceeding by the petitioner to enjoin such order after its issuance. Though here there was no consent involved in the fraud order or the final opinion denying injunction, nevertheless there was a holding by the Postmaster General that the practice complained of existed, and a sustention thereof by the Circuit Court. It is as if in the *National Outdoor Advertising* case there had been a decree of injunction on the merits, without consent. We think that opinion is based upon the fact of decree,

and not the consent. The court seems to be of the opinion that if a decree of injunction is justified where there is a contention of unlawful practice, the expense is not deductible as ordinary and necessary expense. That the practices herein complained of by the Postmaster General were unlawful is demonstrated by examination of the Federal statutes: The fraud order was issued under sections 259 and 732 of Title 39, U. S. Code Annotated. The part thereof pertinent here is:

The Postmaster General may, upon evidence satisfactory to him * * * that any person or company is conducting any other scheme or device for obtaining money or property of any kind through the mails by means of false or fraudulent pretenses, representations, or promises * * * [act to bar the use of the mails or forbid payment of money orders, etc.]

The language is the same in the two statutes. But the same expression is the gist of a *criminal* statute. Section 338 of Title 18, U. S. Code Annotated, provides that:

Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises * * * shall * * * place * * * any letter * * * in any post office * * * shall be fined not more than $1,000 or imprisoned not more than five years, or both.

In other words, the use of the mails in any scheme for obtaining money or property by means of false or fraudulent pretenses, representations, or promises is ground for barring from the mails, and for criminal prosecution. Though no criminal prosecution is suggested in the proceeding, it is apparent that the ground for the fraud order was the unlawful character charged to the practices of the petitioner. Use of the mails for lawful purposes would be no logical basis for a fraud order. We therefore think that injunction against unlawful practices appears here just as in the *National Outdoor Advertising* case. That case certainly stands for the principle that a criminal case and conviction therein is not a necessary base for denial of deduction of legal expenses involved, but that a civil proceeding involving injunction against practice forbidden by law, unsuccessfully defended, calls for such denial. The reversal of the Board's view in that case, in our opinion, requires denial of the petitioner's contention here, as is shown by the fact that deduction of expense was allowed by the court in so far as the defense was successful. We cited the *National Outdoor Advertising* case in *Textile Mills Securities Corporation*, 38 B. T. A. 623, 631. The proceeding in which the legal expenses are involved need be only civil, such as injunction. Such proceeding here appearing, we conclude and hold that the respondent did not err in denying the claim of deduction for legal expenses in either year.

*Decision will be entered for the respondent.*