COMPAÑÍA MARÍTIMA DE E. MORENO & CO., *S. en C.*, ET AL., Plaintiffs and Appellees, *v.* SOL LUIS DESCARTES, SECRETARY OF THE TREASURY OF PUERTO RICO, Defendant and Appellant.

No. 11078. Argued April 7, 1954.—Decided July 29, 1955.

*José Trías Monge, Attorney General,* and *Manuel J. Medina Aymat, Assistant Attorney General,* for appellant. *Juan A. Faría* for appellee.

MR. JUSTICE BELAVAL delivered the opinion of the Court.

Of the deficiencies notified by the former Treasurer of Puerto Rico to the taxpayer in this case, only three items, on which the parties could not agree, form part of this appeal: (1) certain account sales not entered in the books, amounting to $1,191.26, corresponding to the taxable year 1944; (2) certain purchases of merchandise, amounting to $1,263, corresponding to the taxable year 1944, and (3) a contingent account amounting to $2,725.46, corresponding to the taxable year 1945.

■■ As to the account sales not recorded for $1,191.26 corresponding to 1944, the fact situation is as follows: the taxpayer was the owner of three schooners known as "Eloísa", "Pocahontas" and "Lydia Esther", which the

taxpayer operated in a maritime transportation business. There is no doubt that the account sales not entered in the books were made for the operation of said schooners. The trial court concluded that it was an operation expense of the taxpayer's business, without any income or benefit to the taxpayer. On appeal, the Secretary of the Treasury argues that "although it is true that the plaintiff-appellee Cía. Marítima de E. Moreno & Co. *S. en C.*, was the owner of three schooners and the materials worth $1,191.26 were used for the schooners, it is nonetheless true that according to plaintiff's books it was customary for plaintiff to consider the schooners as any other private customer to whom it supplied materials" and "that if plaintiff included the materials it bought in the 'purchases' account which ultimately reduced its net income, it was being allowed to deduct the cost of said merchandise twice: first, when it purchased it; second, in including it as an operation expense of its business."

The evidence showed that all the operation expenses or income from the schooners were entered in the account "schooners." The witness, Benigno López Sariego, Chief Inspector of the Income Tax Bureau, who investigated the taxpayer's books and was called by the Secretary of the Treasury as his witness, testified: "Because, as I already said, they charged everything to the sales account, I mean, *schooners*. Consequently, they made out sales invoices to that schooner for anything, which means that for their purposes they were making a sale . . . they later collected it . . . with the income. Said account was settled either by the profit or the loss." (2d tr. 9)

The main issue here is to determine whether the sales of merchandise not entered in the books represented an operation expense and not an income or profit. The trial court concluded that it constituted an operation expense and not an income, and after carefully examining the whole evidence it is our opinion that said conclusion is absolutely correct. It seems that the other problem is to determine whether there

is a double deduction of the same item for the purpose of computing the income or profit.

As to these invoices, witness Manuel Comas testified the following: "The original entry at page 28 is debited to unpaid accounts which is an account receivable and not an operation expense and it is credited to sales. Originally, it was done that way ... I asked that it be charged to the schooner account and to credit it to accounts receivable ... the accounts receivable was overcharged with amounts that were not to be collected but rather were owed by the schooners themselves ... because those accounts were due to materials delivered ... the income from the schooners included the income of the Compañía Marítima." (1st, tr. 23–24). The original entry and the entry of correction were made the same year (tr. 11). The witness of the Secretary of the Treasury, in answer to the question of the attorney of the Department of Justice: "Then, witness, in concluding in your report that the $1,191.26 had not been entered in the books and hence that *you added them as income*, you overlooked the fact that said amount of $1,191.26 had already been charged to the schooners in another entry?", said: "Probably.—It must have been so." (tr. 11.)

For the purpose of determining the income, on the point in issue, it was sufficient to consider the amount of the sales in cash or on account and the proceeds from the schooners less the operation expenses of the business in general. It is undeniable that the original entry had the effect of converting an operation expense into an account receivable, that is, into an income, and that the entry of correction was justified because, from the materials employed in the operation of the schooners, the taxpayer did not derive any income or profit. It is not logical to think that merely because an enterprise buys merchandise, not for resale but to use it in its own business, it should reduce its income on said merchandise twice: first, at the time of purchase; second, at the time of including it as an operation expense. From the beginning,

the entry was one of expense and not of income. The fact that an accounting error converted it into income does not divest it of its character of expense, and therefore, its correction does not imply a double deduction as an expense item for tax purposes.

■■ As to the purchase of merchandise amounting to $1,263.00 corresponding to the taxable year 1944, the taxpayer offered the testimony of Mrs. María Salas widow of Moreno, who stated: "I came into the company at liquidation time and started searching for papers and investigating, and I found in the safe some vouchers for the purchase of bags, bottles and different articles of the kind bought there . . . I examined them, and clipped them together . . . we usually buy used bags to sell them later and these vouchers were for the purchase of bags and bottles, because we have some drums of tar and we need containers for bottling the oil and tar." (1st. tr. 34.)

In considering this point, the trial court stated the following: "The fact that the plaintiff used to enter in its Journal at the end of each month the amounts of the cash purchases does not prove that from November 1 to January 31 it had not taken from its safe some cash with which to make purchases which, through inadvertence, were not entered in the books but which were stated in specific vouchers deposited and kept in the safe. When the amount of those vouchers was entered under the purchase account within the corresponding year, it being credited, as was done here, (see exhibit II, p. 66) to the cash account, nothing beyond the realm of probability was accomplished."

The Secretary of the Treasury contends that "every tax assessment made by the Secretary of the Treasury of Puerto Rico is presumed to be correct and it may only be controverted by persuasive and authentic evidence . . . . that to overcome said presumption the evidence must be clear and convincing and not based on mere generalities." Although we cannot

question the correctness of said doctrine: *Corporación Azucarera* v. *Tax Court*, 69 P.R.R. 189, 193 (Marrero) (1948); *Treasurer* v. *Tax Court and Aguirre*, 70 P.R.R. 384, 387 (De Jesús (1949); *García* v. *Sec. of the Treasury*, 76 P.R.R. 471, 473 (Pérez Pimentel) (1954), we are not convinced that it correctly applies to the facts herein. The presumption of correctness of the tax assessment is intended to place on the taxpayer the burden to prove the correctness of his income tax return. That is why we have also held that the presumption is overcome by the evidence introduced: *Buscaglia, Treas.* v. *Tax Court*, 70 P.R.R. 883, 886 (De Jesús) (1950); *Soto* v. *Secretary of the Treasury, ante*, p. 169 (Pérez Pimentel) (1955). When the taxpayer introduces evidence in support of his tax return, the problem is reduced to determining, in each case and according to its own particular merits, the persuasive force of said evidence. Each case must be considered as a different proposition according to its own peculiar circumstances, endeavoring, to the extent compatible with the best standards of the probatory value, to have the opinion of the trial court as to credibility prevail.

 The Secretary of the Treasury contends that, as to this item, the sole testimony of Mrs. Salas widow of Moreno is so weak that he could rely on the presumption of correctness and feel relieved of the obligation to introduce evidence and even to cross-examine her. The truth is that the testimony of Mrs. Salas widow of Moreno appears unimpaired in the record and it compels us to apply the rule that the testimony of one witness, which is worthy of credit by the trial court, is sufficient to prove a fact. Furthermore, it is evident that the trial court considered not only the testimony of Mrs. Salas widow of Moreno, but also the entries in the books of the corporation to that same effect. Also the probatory value of specific testimony need not be considered alone, as something unconnected and isolated, having no relation whatsoever with the rest of the evidence; on the contrary, it may be considered as a part of a whole, to which

the elements of proof, established before and after its exposition by other testimony, are not extraneous.

Although, undoubtedly, the trial court is under no obligation to give probatory value to testimony which is incredible, or contrary to the natural order of things, or improbable within the deductive order of human intellect, however it is not precluded, because of the existence of the presumption of correctness, from giving probatory value to testimony which is credible, or possible, or even probable within the reasoned standards of persuasion.

We agree that as to this item of purchase, the testimony of Mrs. Salas widow of Moreno, which explained the origin and nature of the debits which appeared in the taxpayer's books, was sufficient to support the genuineness of the deduction claimed by the taxpayer.

As to a contingent account amounting to $2,725.46 corresponding to the taxable year 1945, Mr. Manuel Comas, testifying for the taxpayer, stated the following: "As I previously stated, the partnership was in process of liquidation as authorized by the Treasurer from February 1 until August 31, 1945 and my attention was called to the fact that the company's safe contained several invoices of J. Rodríguez Pou charged to Compañía Marítima. Mrs. Salas widow of Moreno called my attention to that fact. We were surprised to see that the invoices were not entered in the books. Since we were in process of liquidation our relations with the managing partners were not altogether cordial, and we were sent to Rodríguez Pou to tell him that he had to prove that indebtedness. Mr. Rodríguez Pou sent us an invoice and we asked him to prove that the material had been delivered and he told us that he had a receipt issued by a company employee, proving that the lumber had been delivered, then we asked him for a photostatic copy. We verified the invoice and that it had not been entered in the books and I ordered that it be recorded. It was mainly a ledger account. It was an accepted fact that it was correct . . . the amount was deducted

from the previous year, in the partnership's income tax return . . . the invoice was dated January 20, 1944, and the voucher dated December 10, 1943, one month and ten days prior to the invoice."

The taxpayer kept its books on the accrual basis. In *Bravo* v. *Treasurer of Puerto Rico,* 76 P.R.R. 145, 148, note 2 (Pérez Pimentel) (1954), we held that where the income is taken into consideration as soon as earned, whether received or not, and the expenses are considered as soon as they are incurred, whether paid or not, it is said that the accounting system is on the accrual basis. In said case we also held that an item whose collection is subject to a contingency may not be considered as accrued. *A contrario sensu* we may hold that an expense item which remains contingent cannot be considered incurred: *Lucas* v. *American Code Company,* 280 U. S. 445, 450–452, 74 L. ed. 538, 540–541 (Brandeis) (1930) (referring to damages for breach of contracts) ; *Brown* v. *Helvering,* 291 U. S. 193, 200–201, 78 L. ed. 725, 731 (Brandeis) (1934) referring to the payment of commissions) with annotation on p. 734 L. ed. *et seq.* as to a variety of liabilities to be paid; *Dixie Pine Products Company* v. *Commissioner of Internal Revenue,* 320 U. S. 516, 519, 88 L. ed. 270, 272 (Roberts) (1944), with an annotation on p. 273 L. ed. *et seq.* as to reserve accounts; 143 A.L.R. 1057 (1943) annotation on contingent interests, future taxes and expenses.

If the taxpayer had tried to deduct the item in issue in the year 1943, based on the fact that it was on that date that it received the merchandise, or in the year 1944, based on the fact that it was the date of the invoice, since on none of those dates had it accepted the liability of the payment, we would perhaps have to apply the theory that this was a case of contingent liabilities which are not considered as accrued within an accrual method of accounting. But in this case the taxpayer acknowledged the bill in 1945, set it up on its books as a payable account in 1945 and deducted it from its

income tax return for the year 1945. Therefore, it was not the case of a contingent liability or setting up a reserve account such as are known in tax law. The fact that it paid it after 1945, on an accrual basis, does not alter the situation: *Bravo* v. *Treasurer, supra,* at p. 147. The trial court did not err in declaring this last item deductible.

The judgment will be affirmed.