MODERN HOME LIFE INSURANCE COMPANY, PETITIONER [1] *v.*
COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 1380–68.    Filed May 7, 1970.

*Paul Johnston*, for the petitioner.
*Robert D. Hoffman*, for the respondent.

---

[1] This case was consolidated for trial only with that of Modern Home Fire & Casualty Insurance Co., docket No. 1379–68.

## OPINION

The petitioner claims, and the respondent concedes, that the petitioner is taxable as an insurance company (other than life or mutual) under part III (secs. 831 and 832) [5] of subchapter L. Section 832(c)(4) permits an insurance company to deduct losses incurred (as defined

---

[5] Unless otherwise indicated all subchapter and section references are to the Internal Revenue Code of 1954, as amended.

in subsection (b) (5) of section 832) during the taxable year. Section 832 (b) (5) provides as follows:

(b) DEFINITIONS.—In the case of an insurance company subject to the tax imposed by section 831—

\*        \*        \*        \*        \*        \*        \*

(5) LOSSES INCURRED.—The term "losses incurred" means losses incurred during the taxable year on insurance contracts, computed as follows:

(A) To losses paid during the taxable year, add salvage and reinsurance recoverable outstanding at the end of the preceding taxable year and deduct salvage and reinsurance recoverable outstanding at the end of the taxable year.

(B) To the result so obtained, add all unpaid losses outstanding at the end of the taxable year and deduct unpaid losses outstanding at the end of the preceding taxable year.

In determining the applicability of the statute to the facts in this case, both parties rely on the regulations. The respondent's regulations [6] provide that:

In computing "losses incurred" the determination of unpaid losses at the close of each year must represent actual unpaid losses as nearly as it is possible to ascertain them.

The respondent's regulations [7] also provide that:

Every insurance company to which this section applies must be prepared to establish to the satisfaction of the district director that the part of the deduction for "losses incurred" which represents unpaid losses at the close of the taxable year comprises only actual unpaid losses stated in amounts which, based upon the facts in each case and the company's experience with similar cases, can be said to represent a fair and reasonable estimate of the amount the company will be required to pay. Amounts included in, or added to, the estimates of such losses which, in the opinion of the district director are in excess of the actual liability determined as provided in the preceding sentence will be disallowed as a deduction. The district director may require any such insurance company to submit such detailed information with respect to its actual experience as is deemed necessary to establish the reasonableness of the deduction for "losses incurred."

In respondent's view, the reserves did not represent "unpaid losses" because such losses did not, in fact, occur in the taxable year of the deduction. Respondent argues that the losses were contingent on the continuing nonpayment of mortgages as the result of the continuing illness or disability of the mortgagors. Respondent further argues that by claiming a deduction for the reserves the petitioner attempted to establish a reserve for future losses and that there is no Code provision which permits such a reserve to be established.

In support of his position, respondent relies on the principles of *Brown* v. *Helvering*, 291 U.S. 193, as applied by this Court in *Simpli-*

---

[6] Sec. 1.832–4(a) (5) applicable to taxable years beginning after Dec. 31, 1962; sec. 1.832–1 applicable to taxable years beginning before Jan. 1, 1963.

[7] Sec. 1.832–4(b) applicable to taxable years beginning after Dec. 31, 1962; sec. 1.832–1(b) applicable to taxable years beginning before Jan. 1, 1963.

fied Tax Records, Inc., 41 T.C. 5 (1963), and Peoples Bank & Trust Co., 50 T.C. 750 (1968), affd. 415 F. 2d 1341 (C.A. 7, 1969). The latter cases both deal with the accruability of a reserve for future expenses, in the one case a reserve for services to be rendered in subsequent years and in the other for interest to be paid.

Petitioner takes the position that the facts show that the sickness or disability occurred within the year in which the reserve was deducted, and that the petitioner incurred a loss at that time which was, however, not paid at the close of that year. The petitioner then goes on to state, as its sole argument, that it has carried its burden of proving that its deductions for "unpaid losses" constituted a fair and reasonable estimate of the amount that it would be required to pay on such "unpaid losses." The petitioner does not cite any authority other than the regulations.

At the outset, we must recognize that if the regulations are to be given any meaning, the terms "losses incurred" and "unpaid losses" must be construed to include the estimated liability for losses which could not otherwise be accrued as a deduction in the year in which the insurable event occurred. No special statute or regulations would be required to permit the deduction of losses which were deductible as accrued liabilities as of the close of the taxable year. Therefore, the regulations must be construed to mean that a deduction will be allowed for a loss resulting from the occurrence of an event which fixed liability prior to the close of the taxable year notwithstanding that the amount of the liability cannot then be ascertained with certainty.

The terms "losses incurred" and "unpaid losses" are predicated on insurance concepts of long standing. The same formula for determining the deduction for losses by other than life or mutual insurance companies may be found in the Revenue Act of 1928. In the application of that formula the accepted procedure was described by this Court in Pacific Employers Insurance Co., 33 B.T.A. 501 (1935), affd. 89 F. 2d 186 (C.A. 9, 1937), as follows:

The amount claimed in the return filed by the petitioner and allowed by the respondent was the result of a careful calculation based on the claims filed with it. An examiner investigated each claim, took into consideration a number of factors, listed in the stipulation, which might affect the amount of petitioner's liability and arrived at a sum that in his opinion the petitioner would be required to pay. These sums were totaled and the totals were listed by petitioner as the "unpaid losses" and approved by the respondent. In a case analogous on the facts, but arising under the different statutory provisions of the Revenue Act of 1918, deductions for losses calculated as in this case were allowed as "accrued but unpaid losses." Ocean Accident & Guarantee Corporation, Ltd. v Commissioner, 47 Fed. (2d) 582.

We conclude that the method used by petitioner in reporting unpaid losses in its return was proper and that the method now advanced by it is not in accordance with the statute. The respondent's determination is affirmed.

The procedure even antedates the 1928 Act. Similar procedures were promulgated under the Revenue Act of 1918 and affirmed in *Ocean Accident & G. Corp.* v. *Commissioner*, 47 F. 2d 582 (C.A. 2, 1931).

In thus arguing that the allowance of the deduction in this case should be measured by the strict terms of accrual, the respondent would ignore a long history of insurance law. Admittedly, all of the elements required for the accrual of a liability may not have been present. The respondent's regulations do not require that the liability meet the test of accrual.

The insurance provided by the petitioner is closely akin to, if not within the category of, casualty insurance. The risk insured against was the risk that the policyholder would become sick or disabled and that his employment would thereby be interrupted. The petitioner was obligated to pay the insured's liability monthly under the terms of the mortgage during the period that the insured was prevented by this disability or sickness from performing his work. Thus, if we regard the initial sickness or illness or disability as the occurrence of the event insured against, the petitioner's liability to pay "something" became fixed on or before December 31 of the year in which the insured first became sick or disabled. The amount which the petitioner would be called upon to pay was dependent on the duration of that illness or disability but that condition went to a determination of the amount of the liability, if any, rather than to the fact of liability.

The petitioner has computed its liability for "unpaid losses" in accordance with respondent's regulations. The petitioner followed recognized procedures in estimating the amount of that liability on a case-by-case basis. The respondent does not challenge those estimates. In fact, subsequent events show that the estimates may have been on the low side. It clearly appears, therefore, that the petitioner's estimates were not "in excess of the actual liability" and that the deduction could not be disallowed on that account. The liability thus determined constituted "unpaid losses" within the meaning of section 832(b)(5) and the net amount was properly deducted by the petitioner under section 832(c)(4).

Reviewed by the Court.

*Decision will be entered under Rule 50.*