**CHALLENGE PUBLICATIONS, INC.,**
Petitioner–Appellant,

v.

**COMMISSIONER INTERNAL REVENUE SERVICE,**
Respondent–Appellee.

No. 87–7234.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Jan. 5, 1988.

Memorandum March 2, 1988.

Decided May 6, 1988.

Irving M. Grant, Hufstedler, Miller, Carlson & Beardsley, Los Angeles, Cal., for petitioner-appellant.

William S. Rose, Jr., Acting Asst. Atty. Gen., Ann Belanger Durney, Tax Div., Dept. of Justice, Washington, D.C., for respondent-appellee.

Before CANBY and WIGGINS, Circuit Judges, and LOVELL,* District Judge.

* Honorable Charles Lovell, United States District    Judge for the District of Montana, sitting by

WIGGINS, Circuit Judge:

Appellant, Challenge Publications, Inc. ("Challenge"), appeals the Tax Court's decision affirming $2,560,368 in deficiencies imposed by the Commissioner for the tax years 1972 through 1976. The Tax Court ruled that Challenge could not accrue as a deductible business expense an estimate for unsold magazines that it anticipated would be returned. Appellant claims that this practice satisfies the "all events" test or, alternatively, comports with established industry standards. We affirm.

BACKGROUND

The facts of this case are not seriously in dispute, and have been largely stipulated to. Challenge is a California corporation engaged in the business of publishing magazines sold to consumers by subscription, through traditional newsstands and through newsstand and magazine displays located in book stores and other retail outlets. During the taxable years in question, Challenge maintained its books and records and filed its income tax returns using the accrual method of accounting. During this period, Challenge distributed all of its magazines to be sold at newsstands through Publishers Distribution Corporation ("PDC") and PDC's wholesalers.

Challenge's relationship with PDC was governed by three identical distribution agreements, concluded in 1971, 1973, and 1976. These agreements provided that:

1. PUBLISHER AGREES: * * * *
(d) to bill Distributor for copies delivered * * * and to credit Distributor for returns of all unsold copies evidenced by full copies, or front covers, or headings, or wholesaler affidavits, at the same price.

* * * * * *

3. THE PARTIES AGREE: * * * *
(k) Publisher hereby authorizes Distributor to accept from Distributor's wholesalers and other sales outlets, front covers and/or headings as full evidence of unsold copies of said publication. Publisher further grants Distributor sole discretion to accept affidavits from Distributor's designation.

wholesalers and other sales outlets, provided such affidavit specifies quantity of unsold copies of the particular issue for which credit is requested from Distributor. Publisher shall credit Distributor for all unsold copies evidenced by the aforesaid return provisions, as well as full copy return procedure hereinabove provided.

During each of the taxable years in question, and in accordance with customary practices in the publishing industry, Challenge printed and shipped to PDC substantially more copies of each issue of each magazine than Challenge expected to be sold or were in fact sold. Under the terms of the 1971, 1973, and 1976 agreements, PDC was obligated to pay Challenge only for the net sales of each issue of Challenge's magazines, that is, the number of copies shipped less the number of copies unsold. Prior to shipment of each issue, Challenge projected the number of copies that would remain unsold. This determination was based on Challenge's analysis of the sales and history of each magazine, reports from PDC, current market conditions, recent trends in market conditions and other marketing considerations. These projections formed the basis of Challenge's claims to a business deduction. Challenge consistently reported on its federal income tax returns its net revenues derived from newsstand sales by recording as income the aggregate sales price of all copies of magazines printed and shipped through its distributor, reduced by the aggregate sales price of estimated unsold copies. Challenge claims that its method of reporting net revenues in this fashion was in accordance with generally accepted accounting principles with respect to the magazine publishing industry as well as the customary and usual method of accounting adopted by the publishing industry, and was intended to avoid distortion of its income.

This action arises out of a petition to the United States Tax Court for redetermination of deficiencies in Challenge's tax re-

turns for its 1972–76 taxable years. A trial was held with evidence consisting of a written stipulation of facts and oral testimony concerning the business, accounting and tax practices and standards of Challenge, and of the magazine publishing industry. The Tax Court, Chief Judge Sterrett writing, upheld the government's disallowance of Challenge's claimed deductions in an opinion filed January 28, 1986. The Tax Court's final decision was entered May 12, 1987. The Decision specified the following deficiencies: $398,847 in 1972, $584,864 in 1973, $369,839 in 1974, $710,659 in 1975, and $496,159 in 1976.

Challenge timely appeals. We have jurisdiction over final decisions of the United States Tax Court under 26 U.S.C. § 7482 (1982).

## DISCUSSION

### A. *Standard of Review*

■ Whether a taxpayer has satisfied the "all events" test is a question of law. *ABKCO Indus. Inc. v. Commissioner,* 482 F.2d 150, 154 (3d Cir.1973); *Estate of Franklin v. Commissioner,* 544 F.2d 1045, 1047 n. 3 (9th Cir.1976). Whether an alternative ground would justify Challenge's deduction of this business expense, would also be reviewed under a *de novo* standard.

### B. *The "All Events" Test*

Section 461(a) of the Internal Revenue Code, 26 U.S.C. § 461(a) (1983), provides: "The amount of any deduction or credit allowed by this subtitle shall be taken for the taxable year which is the proper taxable year under the method of accounting used in computing taxable income." This section is implemented by Treas.Reg. § 1.461–1(a)(2) (1987) dealing with the conditions for accruing an expense for income tax purposes. It provides in part that:

Under an accrual method of accounting, an expense is deductible for the taxable year in which all the events have occurred which determine the fact of the liability and the amount thereof can be determined with reasonable accuracy.... While no accrual shall be made in any case in which all of the events have not occurred which fix the liability, the fact that the exact amount of the liability which has been incurred cannot be determined will not prevent the accrual within the taxable year of such part thereof as can be computed with reasonable accuracy.

*Id.* The "all events" test appears to have had its origins in a single phrase that appears in the Supreme Court's opinion in *United States v. Anderson,* 269 U.S. 422, 441, 46 S.Ct. 131, 134, 70 L.Ed. 347 (1926) ("[I]t is also true that in advance of the assessment of a tax, all the events may occur which fix the amount of the tax and determine the liability of the taxpayer to pay it."). Since then, the Court has described the "all events" test, "established" in *Anderson,* as "the 'touchstone' for determining the year in which an item of deduction accrues" and as "a fundamental principle of tax accounting." *United States v. Consolidated Edison Co.,* 366 U.S. 380, 385, 81 S.Ct. 1326, 1329–30, 6 L.Ed.2d 356 (1961).[1]

■ Under the "all events" test, two requirements must be satisfied in order for a deduction to be appropriate in any given year: (1) all of the events that bear on the fact of liability must have occurred, and (2) the amount of liability must be determinable with reasonable accuracy. *Kaiser Steel Corp. v. United States,* 717 F.2d 1304, 1306 (9th Cir.1983). The Tax Court ruled that Challenge had not satisfied the first prong, and did not even reach the issue of reasonable accuracy. We need, therefore, only consider whether Challenge's practice fails the "fact of liability" prong of the "all events" test.

The Supreme Court has emphasized that "a liability does not accrue as long as it remains contingent." *Brown v. Helvering,* 291 U.S. 193, 200, 54 S.Ct. 356, 360, 78 L.Ed. 725 (1934). To satisfy the "all

---

**1.** The "all events" test has been incorporated into the Internal Revenue Code by the Deficit Reduction Act of 1984, Pub.L. 98–369, 98 Stat. 598, 26 U.S.C. § 461(h)(4) (West Supp.1987).

The changes to the rule incorporated in section 461(h) do not apply to this case, since it was enacted after the taxable years in question here.

events" test, a liability must be "fixed and absolute," *id.* at 201, 54 S.Ct. at 360, and must be "unconditional." *Lucas v. North Texas Lumber Co.*, 281 U.S. 11, 13, 50 S.Ct. 184, 185, 74 L.Ed. 668 (1930). Finally, a taxpayer may not "deduct an estimate of an anticipated expense, no matter how statistically certain, if it is based on events that have not occurred by the close of the taxable year." *United States v. General Dynamics Corp.*, —— U.S. ——, 107 S.Ct. 1732, 1736, 95 L.Ed.2d 226 (1987) (*citing Brown*, 291 U.S. at 201, 54 S.Ct. at 360). However, a liability need not be "final and definite in amount" in order to satisfy the first prong of the test. *United States v. Hughes Properties, Inc.*, 476 U.S. 593, 106 S.Ct. 2092, 2096, 90 L.Ed.2d 569 (1986). This inquiry is reserved for the second prong of the "all events" test. *Kaiser Steel*, 717 F.2d at 1306 ("The essence of the government's argument is that 'all events' have not occurred to fix the fact of a taxpayer's liability until the amount of the liability is known with complete accuracy. Such a contention, were it accepted, would have the effect of fusing the two-pronged inquiry into one.").

The critical issue, therefore, is whether Challenge's estimate of returned magazines represents a sufficiently fixed, absolute, and unconditional liability. The parties chiefly rely on two recent Supreme Court cases which treat this aspect of the "all events" test. Challenge cites *United States v. Hughes Properties, Inc.*, 476 U.S. 593, 106 S.Ct. 2092, 90 L.Ed.2d 569 (1986), which ruled that a casino operator could deduct as a business expense the amounts guaranteed for payment on "progressive" slot machines but not yet won by playing patrons as of the end of the tax year. The government relies on *United States v. General Dynamics Corp.*, —— U.S. ——, 107 S.Ct. 1732, 95 L.Ed.2d 226 (1987), which held that a company providing medical benefits to its employees could not deduct at the close of the taxable year an estimate of its obligation to pay on claims which had yet to be presented. The Court's decision in *General Dynamics* provides better guidance in this case.

The Court in *General Dynamics* considered the calculation of claims to be presented to the company as a "mere estimate of liability based on events that had not occurred before the close of the taxable year." 107 S.Ct. at 1736. The Court concluded that prior to the filing of a claim by an employee, the contingent liability was not fixed. *Id.* By contrast, the Court held that for the progressive slot machines at Harold's Club in Reno the "event creating liability, ... was the last play of the machine before the end of the fiscal year, since that play fixed the jackpot amount irrevocably. That event occurred during the taxable year." *Hughes Properties*, 106 S.Ct. at 2098 (citation omitted).

■ Challenge vigorously argues its liability to its distribution agent, Publishers Distribution Corporation ("PDC"), was fixed at the time of shipment of each issue. The government argues, correctly we hold, that the legally significant moment was when PDC returned the evidence of unsold copies, as required by sections 1(d) and 3(k) of its agreement with Challenge. It seems plain that under the agreement, Challenge was under no obligation to reimburse PDC without these evidences of unsold copies. Therefore, it cannot be said its liability to PDC was fixed, absolute, and unconditional at the time of shipment, but only at the time of the returned documents. On these grounds, we can distinguish the Supreme Court's ruling in *Hughes*, and affirm on the basis of *General Dynamics*. Indeed, the *Hughes* Court recognized that the timing of the moment in which liability was fixed is essential. 106 S.Ct. at 2098. Simply put, Challenge's liability was only fixed when the return of documents was made, and that event occurred after the taxable year.

Moreover, this result is confirmed by those cases dealing with the "all events" test on more analogous facts to our case. In *Readers' Publishing Corp. v. United States*, 40 F.2d 145 (Ct.Cl.1930), the Court of Claims held the plaintiff could not deduct the expenses of creating a reserve for magazines returned to the publisher from its distributor. *Id.* at 148. Challenge attempts to distinguish this case by observ-

ing that the plaintiff there was not an accrual taxpayer and thus had not attempted to "match" income with related liabilities. This ground for distinction is misleading. "Matching" of income and expenses is *not* an additional requirement of the "all events" test. *See American Auto. Ass'n v. United States,* 367 U.S. 687, 81 S.Ct. 1727, 6 L.Ed.2d 1109 (1961) (where taxpayer was not allowed to allocate prepaid income over the months during which services would be provided and expenses incurred); *World Airways, Inc. v. Commissioner,* 564 F.2d 886 (9th Cir.1977) (where the taxpayer was not allowed to allocate the reasonably foreseeable cost of statutorily mandated airplane repairs to the periods in which the plane mileage revenues were accumulated). Challenge cannot successfully distinguish the rule in *Readers' Publishing Corp.*

More recently, a circuit has ruled that the "all events" test is not satisfied where a record manufacturer estimates its returns on records shipped to distributors. *Ertegun v. Commissioner,* 531 F.2d 1156, 1159 (2d Cir.1976). The Second Circuit concluded "the return of the records cannot be dismissed as a merely 'ministerial' act. That unsold records usually were returned ... does not alter the fact that, in the absence of such return, the refund would not have been extended." *Id.* Challenge, once again, attempts to distinguish this case on a thin ground. They note the records were only returnable with written notice by the record manufacturer. Nevertheless, this distinction was of no significance to the Second Circuit, nor is it for us. The decisive fact is that Challenge's liability for returned magazines only attached at the moment some sort of return was made by its distributor.

Finally, Challenge argues that the inequitable consequences caused by application of the "all events" test to magazine publishers has been recognized by Congress and that the resulting legislation, I.R.C. § 458 (West Supp.1987), although not applicable to the years in issue, reaches the same "functional result." Section 458, effective only for taxable years beginning after September 30, 1979, permits an accru-

al-basis distributor of magazines to exclude from gross income the income attributable to magazines returned within two months and fifteen days after the close of the taxable year. The legislative history of this section confirms that under then-existing law, applicable to this case, Challenge was required to include the income from the sale of the magazines in gross income when they were shipped to PDC's wholesalers, irrespective of the number of returns. H.Cong.Rep. No. 1800, 95th Cong.2d Sess., *reprinted in* 1978–3 C.B. 521 (1978), U.S. Code Cong. & Admin.News 1978, p. 6761. We, therefore, rule that Challenge's deductions for estimates of returned magazines from its distributors violates the first prong of the "all events" test, requiring that liabilities be sufficiently fixed, absolute, and unconditional.

C. *Deductions Justified by Industry Practice*

Challenge suggests that even if the "all events" test is not satisfied they may make a deduction in accordance with generally accepted accounting principles and the practice of the magazine industry. They base this argument on I.R.C. § 446(a) (1982) which provides that "[t]axable income shall be computed under the method of accounting on the basis of which the taxpayer regularly computes his income in keeping his books." Only by applying this provision, Challenge argues, does it insure that their income will not be "distorted."

■ Nevertheless, whether a business expense has been "incurred" to permit its accrual for tax purposes is governed entirely by the "all events" test. In *Hughes Properties,* the Supreme Court reiterated that the "all events" test is the " 'touchstone' for determining the year in which an item of deduction accrues." 106 S.Ct. at 2096. And in *General Dynamics* the Court said that "whether a business expense has been 'incurred' so as to entitle an accrual-basis taxpayer to deduct it ... is governed by the 'all events' test...." 107 S.Ct. at 1735. It is also well established that reasonable accounting methods which clearly reflect income for accounting pur-

poses, of the sort that Challenge employs, are often impermissible under the tax law. *Thor Power Tool Co. v. Commissioner,* 439 U.S. 522, 541, 99 S.Ct. 773, 785, 58 L.Ed.2d 785 (1979) (where it was recognized that the "divergence between tax and financial accounting is especially common when a taxpayer seeks a current deduction for future expenses or losses").

We reject Challenge's argument that its accounting practices justified its deducting an estimate of returned magazines from its distributor.

CONCLUSION

The decision of the Tax Court is AFFIRMED.