GOLD COAST HOTEL & CASINO, a Nevada Limited Partnership, Gaughan Herbst, Ltd., a Nevada General Partnership, Michael J. Gaughan and Jerry Herbst, Plaintiffs–Appellees,

v.

UNITED STATES of America and Commissioner of Internal Revenue Service, Defendants–Appellants.

No. 96–17236.

United States Court of Appeals, Ninth Circuit.

Submitted Dec. 12, 1997.*

Decided Oct. 16, 1998.

---

* The panel unanimously finds this case suitable for submission without oral argument pursuant to Fed. R.App. 34(a) and Ninth Circuit Rule 34.4.

Barry L. Lieberman, Dickerson, Dickerson, Lieberman & Consul, Las Vegas, NV, for plaintiffs–appellees.

Sally J. Schornstheimer, United States Department of Justice, Tax Division, Washington, DC, for defendants–appellants.

Before: FLETCHER, T.G. NELSON, Circuit Judges, and WHALEY,** District Judge.

WHALEY, District Judge.

The United States of America and Commissioner of Internal Revenue appeal the district court's grant of summary judgment in favor of Gold Coast Hotel & Casino, *et al.*

** Honorable Robert H. Whaley, United States District Judge for the Eastern District of Washington, sitting by designation.

The district court held that a casino using the accrual method of accounting may deduct the value of slot club points won by a slot club member in the tax year in which the member has accumulated the minimum number of points necessary to redeem a prize. We affirm.

## FACTUAL BACKGROUND

Gold Coast Hotel & Casino ("Gold Coast") is a Nevada limited partnership formed in 1985 for the purpose of operating a licensed gambling casino in Las Vegas, Nevada. Gold Coast has operated a slot club since March 1987. A slot club is a promotional tool used to attract slot machine players. After filling out the necessary paperwork, slot club members receive a club card, similar to an ATM card. Slot club members insert their club cards into a slot machine and a computer tracks their accumulation of slot club points.

Slot club points can be redeemed for prizes ranging from coffee mugs to Hawaiian vacations. The minimum number of points needed to redeem a prize is 1,200. As stipulated to by the parties, the market value of each club point is $0.0021. Accordingly, 100,000 points have a value of $210. Gold Coast uses a computerized data bank to track each club member's slot club points. The computer credits a member's account for points won and debits the account when points are redeemed for prizes.

Members can redeem slot club points for prizes in two ways. First, members can go to Gold Coast's redemption center and pick their prize. Alternatively, club members can go to the redemption center and get a voucher for a prize from an off-site retailer, such as a travel agency or appliance store. The club member then takes the voucher to the off-site retailer to redeem the prize and the retailer bills Gold Coast a previously agreed upon amount.

At the end of 1988, the *difference* between the total value of slot club points that had been accumulated by club members and the total value of slot club points that had been

redeemed by club members was $1,276,464. In 1989 members accumulated additional slot club points valued at $2,445,780 and redeemed points valued at $1,724,801. Thus, at the end of 1989 there were outstanding slot club points valued at $1,997,443, an increase of $720,979 over the prior year's ending balance. Gold Coast deducted this amount—$720,979—as an expense on its 1989 partnership tax return. In addition, on its 1989 tax return Gold Coast recaptured as income $105,969, representing the value of accumulated slot club points in those accounts in which there had been no activity for over a year, and which had been deducted as an expense in the prior year.

During 1990, club members accumulated additional slot club points valued at $3,076,909 and redeemed points valued at $2,386,216. Thus, at the end of 1990 the value of outstanding slot club points was $2,688,136, an increase of $690,693 over the prior year's ending balance. Gold Coast deducted this amount—$690,693—as an expense on its 1990 partnership tax return. Additionally, on its 1990 tax return Gold Coast recaptured as income $68,910, representing the value of accumulated slot club points in those accounts in which there had been no activity for over a year, and which had been deducted as an expense in the prior year.

On September 26, 1994, the Commissioner of Internal Revenue sent the Tax Matter Partner of Gold Coast a Notice of Final Partnership Administrative Adjustment ("FPAA") for the tax year ending December 31, 1989 and a Notice of Final Partnership Administrative Adjustment for the tax year ending December 31, 1990. In the notices, the Commissioner proposed that adjustments to income be made in four categories, one of which was accrued slot club points. The FPAA for the tax year ending in 1989 proposed to increase income a total of $1,935,469 for adjustments relating to slot club points.[1] While the FPAA for the tax year ending in 1990 proposed to increase income a total of $807,330,[2] the parties agree that the proposed increase for 1990 should be $738,420.[3]

## PROCEDURAL BACKGROUND

On December 23, 1994, Gold Coast[4] filed a complaint pursuant to 26 U.S.C. § 6226 in the United States District Court for the District of Nevada challenging the Commissioner's proposed adjustments as set forth in the FPAA for the 1989 tax year and the FPAA for the 1990 tax year. As required to invoke district court jurisdiction, Gold Coast had first deposited with the Internal Revenue Service the amounts by which its tax liability would be increased if the Commissioner's proposed adjustments to income were made for the 1989 and 1990 tax years.

In its Complaint, Gold Coast challenged, inter alia, the Commissioner's adjustments with respect to accrued slot club points and sought a determination that Gold Coast need not adjust its 1989 or 1990 income based on that category. Relying on undisputed stipulated facts, the parties filed cross-motions for summary judgment on numerous issues, including when the value of accumulated slot club points is "incurred" as an expense and,

1. The Commissioner arrived at this figure by disallowing as expenses (1) the value of all outstanding slot club points at the end of 1989 ($1,997,433) and (2) the value of all slot club points redeemed at off-site retailers for which Gold Coast had not been billed at the end of 1989 ($43,995); and crediting Gold Coast for the value of slot club points in accounts for which there had been no activity for over one year, which Gold Coast had already recaptured as income in the tax year 1989 ($105,969).

2. The Commissioner arrived at this figure by disallowing as expenses (1) the value of the increase in outstanding slot club points at the end of 1990 ($752,667) and (2) the value of all slot club points redeemed at off-site retailers for which Gold Coast had not been billed by the end of 1990 ($54,663).

3. The error in computation was a result of the Commissioner's failure to credit Gold Coast for the value of slot club points in accounts for which there had been no activity for over one year, which Gold Coast had already recaptured as income for the tax year 1990.

4. The General Partner of Gold Coast is Plaintiff Gaughan–Herbst, Ltd., a general partnership owned 50% by Plaintiff Michael J. Gaughan and 50% by Plaintiff Jerry Herbst. Gold Coast, Gaughan–Herbst, Ltd., Michael J. Gaughan, and Jerry Herbst are hereinafter referred to collectively as "Gold Coast."

thus, is deductible pursuant to 26 U.S.C. § 162(a).

In an order filed on September 26, 1996, the district court rejected the Commissioner's argument that the expense of slot club points is not incurred until the points are redeemed for a prize. Rather, the court held that Gold Coast had properly deducted as an expense the value of those slot club points that had been accumulated by members with more than 1,200 points in their slot club account. However, the district court disallowed Gold Coast's deduction of the value of slot club points attributable to members who had not yet earned 1,200 points.

The Commissioner timely filed its notice of appeal. In its appeal, the Commissioner challenged only the district court's allowance of a deduction for the value of accumulated slot club points attributable to members who had more than 1,200 points in their accounts. However, the Commissioner asserted first that this court was without jurisdiction to hear the appeal because the judgment below was not final since it had not been determined by the district court how many of the outstanding slot club points in 1989 or 1990 were attributable to club members with more than 1,200 slot club points. Accordingly, in an order filed on November 26, 1997, this court ordered the parties to show cause why the case should not be remanded to the district court for further proceedings.

After considering the parties' letter briefs and oral argument, this court concluded that the judgment of the district court was not final since there were more than ministerial tasks left for the district court to resolve. Accordingly, on February 20, 1998, the case was remanded to the district court for entry of final judgment, with such entry to include the factual determination of the dollar value of slot club points that are attributable to customers with more than 1,200 slot club points for each of the tax years 1989 and

1990. The district court entered final judgment on April 20, 1998. Thus, we have jurisdiction pursuant to 26 U.S.C. §§ 6226(g), 74829(a) and 28 U.S.C. § 1291.

## DISCUSSION

The Internal Revenue Code allows a deduction for "all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business." 26 U.S.C. § 162(a). Accordingly, taxpayers using the accrual method of accounting, see 26 U.S.C. § 446(c)(2), are entitled to deduct expenses in the year which they are incurred, regardless of when paid. See § 162(a); Treas. Reg. § 1.446–1(c)(1)(ii).

The Commissioner contends that a casino using the accrual method of accounting does not incur the expense of accumulated slot club points until such time as the points are actually redeemed for a prize because until the time of redemption "all events" fixing the casino's liability have not occurred. Whether an expense has been "incurred" is governed by the "all events" test that originated in *United States v. Anderson*, 269 U.S. 422, 441, 46 S.Ct. 131, 70 L.Ed. 347 (1926), now codified at 26 U.S.C. § 461(h)(4).[5] Whether a taxpayer has satisfied the "all events" test is a question of law reviewed *de novo*. See *Challenge Publications, Inc. v. Commissioner*, 845 F.2d 1541, 1543 (9th Cir. 1988). The fundamental premise underlying the "all events" test is that "although expenses may be deductible before they become due and payable, liability must first be firmly established." *United States v. General Dynamics Corp.*, 481 U.S. 239, 243, 107 S.Ct. 1732, 95 L.Ed.2d 226 (1987). Accordingly, to be deductible the liability must be fixed, absolute, see *Brown v. Helvering*, 291 U.S. 193, 201, 54 S.Ct. 356, 78 L.Ed. 725 (1934), and unconditional, see *Lucas v. North Texas Lumber Co.*, 281 U.S. 11, 13, 50 S.Ct.

5. The "all events" test was incorporated into the Internal Revenue Code at 26 U.S.C. § 461(h)(4) by the Deficit Reduction Act of 1984, Pub.L. 98–369, § 91(a), 98 Stat. 494, 600. Section 461(h)(1) further provides that the "all events" test is not satisfied any earlier than when "economic performance" has occurred. However, the parties here agree that the "economic performance" requirement does not apply to the tax years at issue here. See Treas. Reg. § 1.461–4(k)(3) (explaining that, for payment liabilities for which payment is economic performance, the requirement applies to liabilities that would otherwise be deductible or incurred for taxable years beginning after December 31, 1991).

184, 74 L.Ed. 668 (1930). A liability may not be deducted if it is contested, *see General Dynamics Corp.*, 481 U.S. at 243, 107 S.Ct. 1732, or if it is contingent upon the occurrence of a future event. *See Lucas v. American Code Co.*, 280 U.S. 445, 452, 50 S.Ct. 202, 74 L.Ed. 538 (1930).

There are two prongs to the "all events" test, both of which must be satisfied before an expense is properly deductible. *See United States v. Hughes Properties, Inc.*, 476 U.S. 593, 600, 106 S.Ct. 2092, 90 L.Ed.2d 569 (1986). First, all events that establish the fact of the liability must have occurred. *See id.* Second, the amount of such liability must be capable of being determined with reasonable accuracy. *See id.* Accordingly, to determine when Gold Coast incurs the expense of the value of accumulated slot club points, it is necessary to determine: first, what event fixes Gold Coast's liability for the value of slot club points; and second, whether the amount of that liability is capable of being determined with reasonable accuracy.

Two leading Supreme Court decisions address the first prong of the "all events" tests, *United States v. General Dynamics Corp.*, 481 U.S. 239, 107 S.Ct. 1732, 95 L.Ed.2d 226 (1987), and *United States v. Hughes Properties, Inc.*, 476 U.S. 593, 106 S.Ct. 2092, 90 L.Ed.2d 569 (1986). Gold Coast relies on *Hughes* for its position that the "last event" fixing Gold Coast's liability occurs when the minimum number of club points necessary to earn a prize are accumulated, because at that time liability is fixed pursuant to Nevada gaming regulations.[6] The Commissioner, however, cites *General Dynamics* as support for its position that the "last event" fixing Gold Coast's liability as absolute and unconditional is the redemption of club points by a club member. We agree with the district court that the facts of this case are more analogous to those in *Hughes* than to those in *General Dynamics* and, thus, hold that the last event fixing Gold Coast's liability for the value of slot club points is a club member's accumulation of 1,200 slot club points.

In *Hughes*, the Supreme Court held that a casino operator could deduct the amount of money guaranteed for payment on progressive slot machines even though the amount had not been won by the end of the tax year. *See Hughes Properties*, 476 U.S. at 602–03, 106 S.Ct. 2092. In doing so, the court in *Hughes* reasoned that although the dollar amount of the jackpot would continue to grow until the winning combination appeared, the obligation to pay the amount that had already accrued on the machine was fixed and irrevocable under state law at any moment. *Id.* at 601–02, 106 S.Ct. 2092. The court recognized that the jackpot may not be won for years or that the casino may go bankrupt before the jackpot was won. *See id.* at 605–06, 106 S.Ct. 2092. Nonetheless, the court noted that:

> th[e] potential nonpayment of an incurred liability exists for every business that uses an accrual method, and it does not prevent accrual. . . . "The existence of an absolute liability is necessary; absolute certainty that it will be discharged by payment is not."

*Id.* at 606, 106 S.Ct. 2092 (quoting *Helvering v. Russian Fin. & Constr. Corp.*, 77 F.2d 324, 327 (2nd Cir.1935)). Those liabilities not discharged by payment, the Court noted, can simply be recaptured as income and, thus, subject to tax. *See id.* Accordingly, the court in *Hughes* held that the "last event" fixing the casino's liability was the last play of the slot machine before the end of the casino's fiscal year. *See id.* at 602–03, 106 S.Ct. 2092.

Here, like the guaranteed prize on the jackpot in *Hughes*, Gold Coast's liability to redeem accumulated slot club points is fixed and unconditional under state law once a slot club member accumulates 1,200 points. Moreover, the fact that a club member may choose not to redeem his/her points immediately does not render Gold Coast's otherwise fixed liability conditional. Rather, like the liability of the casino in *Hughes*, which grew as the jackpot grew, the liability of Gold

---

**6.** Gold Coast submitted an uncontroverted affidavit from a former Nevada Gaming Control Board member, who states that any attempt by Gold Coast not to redeem points accrued by its customers would have been improper under gaming regulations and would have been grounds for disciplinary action or revocation of Gold Coast's gambling license.

Coast simply increases when a slot club member elects to let his/her club point total grow. *See Hughes Properties,* 476 U.S. at 604, 106 S.Ct. 2092 (noting that the timing of payment is irrelevant when a taxpayer uses the accrual method of accounting).

The Commissioner relies heavily on the fact that not all slot club members will redeem their points for prizes to support its position that Gold Coast's liability is not absolute until a club member actually demands "payment" by redeeming his/her points for a prize. However, the *Hughes* court rejected similar reasoning when it held that a casino's fixed obligation to pay out the amount shown on progressive slot machines was not rendered contingent by the fact that it was possible that the liability would not be paid. *Hughes Properties,* 476 U.S. at 601–02, 106 S.Ct. 2092. Indeed the Court in *Hughes* explicitly noted that potential nonpayment of an incurred liability exists for every business that uses the accrual method of accounting, and that for purposes of the "all events" test, what is critical is the existence of an *absolute liability,* not an *absolute certainty* the liability will be discharged by payment. *See Hughes Properties,* 476 U.S. at 606, 106 S.Ct. 2092.

The Commissioner is correct that in *Hughes* the possibility that the liability represented by the progressive jackpot amount would not eventually be discharged was more remote than the possibility here that a club member who has won 1,200 points will not redeem a prize. Nonetheless, this court has held that where an obligation is "fixed" and there is a "reasonable expectancy" of the obligation being converted into cash or its equivalent, then the obligation satisfies the first prong of the "all events" test, even when less than all of the obligation will eventually be discharged by payment. *See Flamingo Resort, Inc. v. United States,* 664 F.2d 1387, 1389 (9th Cir.1982) (interpreting the "all events" test for purposes of determining when an accrual-based taxpayer's right to receive income is fixed and unconditional).

Here, Gold Coast's liability to redeem accumulated slot club points is fixed and unavoidable under state law. In addition, the record indicates that there is a reasonable expectancy that members who accumulate more than 1,200 club points redeem those points for prizes. Because the critical factor for purposes of the "all events" test is the existence of an absolute liability, not an absolute certainty that liability will be discharged by payment, Gold Coast's liability is not rendered conditional by the possibility that some of the slot club points accumulated by members may go unredeemed.

The Commissioner's reliance on *General Dynamics* to the contrary is misplaced. The plaintiff in that case, General Dynamics Corporation, was an accrual-basis taxpayer that self-insured its employees' medical plan. Employees seeking reimbursement for medical expenses for services provided by third parties were required to submit properly documented claim forms to employee benefits personnel at General Dynamics. The employee benefits personnel would verify eligibility and forward worthy claims to the plan administrators. The administrators' claim processors would review the claims and approve covered expenses for payment. *See General Dynamics,* 481 U.S. at 241, 107 S.Ct. 1732.

Delay by employees in filing claims and the time necessary to process claims resulted in a time lag between when medical services were rendered and when payment was made by General Dynamics. Accordingly, General Dynamics established a reserve account reflecting its estimated liability for medical care received by employees but unpaid by General Dynamics. General Dynamics sought to deduct the amount of its estimated liability in this account at the end of the tax year as an accrued expense. *See id.* at 241–42, 107 S.Ct. 1732.

The Supreme Court in *General Dynamics* held that the estimated liability represented by the reserve account did not satisfy the first prong of the "all events" test because the last event necessary to fix that liability had not occurred by the end of the tax year. *See General Dynamics,* 481 U.S. at 244, 107 S.Ct. 1732. The Court held that, as a matter of law, General Dynamics' liability to reimburse its employees was conditioned on the employee's submitting a properly documented claim to General Dynamics. *See id.* at

244 & n. 4, 107 S.Ct. 1732. In doing so, the Court reasoned that the employees had been informed that it would be necessary to submit satisfactory proof of the charges claimed in order to obtain payment under the plan. *See id.* at 244, 107 S.Ct. 1732. The Court thus found that the filing of such a claim was not a mere technicality but, rather, was a condition precedent to liability on the part of General Dynamics. *See General Dynamics,* 481 U.S. at 244 n. 5, 245, 107 S.Ct. 1732. Since the Court held as a matter of law that General Dynamics was not liable to the employee for payment of covered medical services until the employee filled out and submitted a claim form with satisfactory proof of the charges claimed, it necessarily followed that General Dynamics was not entitled to deduct the amount in the reserve account because the liability it represented was a contingent liability. *See id.* at 244, 107 S.Ct. 1732.

Despite the Commissioner's strenuous argument to the contrary, *General Dynamics* is not controlling here. In *General Dynamics,* medical services were provided to General Dynamics' employees by third parties. It follows then that in order to trigger General Dynamics' liability to reimburse its employees for the expenses of covered services rendered by those third parties, an employee was required to file a properly documented claim establishing General Dynamics' obligation. Submitting documented proof of a covered claim, the Court found, was not a technicality.

Here, a slot club member's demand for payment (redemption of points) is a technicality. It is nothing more than making a demand for payment of an uncontested liability. Unlike in *General Dynamics,* there is no involvement of third parties necessitating that slot club members establish or otherwise offer proof of their right to payment. Rather, Gold Coast has a fixed, unavoidable, and uncontested obligation to redeem accumulated slot club points for prizes upon demand. Furthermore, the Commissioner's argument to the contrary, that the liability represented by an uncontested obligation is not unconditional until such time as it is presented for payment, renders the difference between accrual and cash-based accounting methods virtually meaningless. Such a result is inconsistent with the express recognition by the Court in *General Dynamics* that there is a legal difference between a liability being "due and payable" and it being "firmly established." *Id.* at 243, 107 S.Ct. 1732 (noting that "although expenses may be deductible before they have become due and payable, liability must first be firmly established"). Accordingly, demand for payment is not a condition precedent to fixing Gold Coast's liability for the value of accumulated slot club points.

Finally, the Commissioner also contends that Gold Coast was not entitled to summary judgment because Gold Coast did not satisfy the second prong of the "all events" test. The second prong of the "all events" test requires that the amount of the liability be capable of being determined with reasonable certainty. *See Hughes Properties,* 476 U.S. at 600, 106 S.Ct. 2092.

Here, under state law, Gold Coast's liability is fixed for the value of all accumulated club points in accounts with more than 1,200 points. Since the parties have stipulated to the value of each club point, the amount of Gold Coast's liability can be determined by simply multiplying that value by the number of accumulated points in accounts with more than 1,200 points. Thus, Gold Coast's liability is known with reasonable certainty.

The Commissioner contends, however, that Gold Coast has not estimated its liability with reasonable certainty because it deducts the value of all accumulated slot club points in accounts with over 1,200 points. The Commissioner argues that its analysis of the data in the record suggests that only 69% of slot club points are actually redeemed. The Commissioner's argument, however, confuses determining the amount of Gold Coast's liability with determining the percentage of that liability that will be discharged by payment. The second prong of the "all events" test requires only that the amount of the liability be capable of being determined with reasonable certainty. *See Hughes Properties,* 476 U.S. at 600, 106 S.Ct. 2092. The percentage of that liability that will actually

be discharged by payment is simply not relevant to this prong of the "all events" test.

Further, the decision in *Wien Consol. Airlines,* relied on by the Commissioner, is inapposite. In that case, an employer was required to make monthly payments to the children of deceased employees for as long as they remained minors, and to the surviving spouses of deceased employees for as long as they remained single. *See Wien Consol. Airlines, Inc. v. Commissioner,* 528 F.2d 735, 737 (9th Cir.1976). Thus, the actual amount of the taxpayer's liability, being dependent on the occurrence or nonoccurrence of a future event, could not be calculated, and it was necessary for the taxpayer to use probabilities and actuarial tables to estimate the amount of its liability. The issue faced by the court in *Wien Consol. Airlines* was whether the taxpayer's proposed estimate of its liability was reasonable. *See id.* at 738. Since the court here is not faced with an estimate of Gold Coast's liability, the Commissioner's reliance on *Wien Consol. Airlines* is misplaced.

## CONCLUSION

The last event fixing Gold Coast's liability for the value of slot club points is a club member's accumulation of the 1,200th point. Since the parties have stipulated to the value of a slot club point, the amount of Gold Coast's liability is capable of being determined with reasonable certainty. Therefore, Gold Coast has incurred the expense of the value of those slot club points accumulated by members with 1,200 or more points in their slot club accounts and it may properly deduct that expense at the end of Gold Coast's fiscal year pursuant to 26 U.S.C. § 162(a).

**AFFIRMED.**