T.C. Memo. 2001-288

UNITED STATES TAX COURT

NEMETSCHEK NORTH AMERICA, INC., Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 7829-99.                    Filed October 29, 2001.

Joseph Schmelzle (an officer), for petitioner.

<u>William J. Gregg</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

LARO, <u>Judge</u>:  Petitioner's predecessor, Diehl Graphsoft,

Inc. (Diehl), petitioned the Court to redetermine respondent's

determination of a $142,986 deficiency in its Federal income tax

for its taxable year ended May 31, 1995 (1995 taxable year).[1]  We must decide whether respondent abused his discretion under section 446 when he determined that Diehl must change its overall method of accounting from a hybrid method to an accrual method. We hold he did not.  Unless otherwise indicated, section references are to the Internal Revenue Code in effect for the subject year.

## FINDINGS OF FACT

Some facts were stipulated and are so found.  The stipulated facts and the exhibits submitted therewith are incorporated herein by this reference.  Diehl is a publicly traded corporation whose principal place of business was in Columbia, Maryland, when its petition was filed.

Diehl designs, develops, manufactures, and sells unmodified software that allows sophisticated design and engineering projects to be performed on computer hardware.  Diehl also develops and sells to its software users, usually as part of the software sale, three manuals which are an integral part of the software.  The manuals, which are printed and bound by outside vendors, consist of a:  (1) Programming language manual, (2) technical reference manual, and (3) tutorial manual.  Diehl also sells to its customers software produced by third parties.  (We

---

[1] Respondent also determined that Diehl is liable for the increased rate of interest under sec. 6621(c).

hereinafter refer collectively to all of the products sold by Diehl as products.)  In addition to its products, Diehl provides to its customers free of charge access to its customer support services.

Diehl sells some of its products within the United States through its employees, dealers, and distributors.  It sells the remainder of its products outside the United States through foreign distributors and resellers.  Most of Diehl's sales (approximately 85 percent of them by revenue) are of a single product (MiniCad5) that is sold to users of MacIntosh computers.

Diehl's gross receipts for the subject year were $4,848,333.  All of these receipts were attributable to Diehl's sale of its products.  Diehl's sales were made as follows:  (1) Ten percent as direct sales between Diehl and end users, (2) 4 percent as sales through dealers, and (3) 86 percent as sales through distributors (both foreign and domestic).  Diehl's sales were made either:  (1) By delivering its products electronically through an electronic code and serial number or (2) by delivering its products in boxes containing the software (usually on a disk), manuals, and any other item that Diehl considered necessary for the particular market.  In the latter case, the boxes and the manuals were significant parts of the sales.

Upon its inception in 1985 and throughout the subject year, Diehl used a hybrid method of accounting for book and tax

purposes. Specifically, Diehl used the: (1) Cash receipts and disbursements method (cash method) to report its receipts and certain expenditures and (2) lower of cost or market method to value its yearend inventory. At the beginning and end of its 1995 taxable year, Diehl had an inventory valued for Federal income tax purposes at $112,945 and $132,820, respectively. Diehl's inventory consisted of: (1) Blank disks, (2) software, manuals, binders, and videos, and (3) shipping materials and other supplies. The values of those items on May 31, 1994 and 1995, were as follows:

|  | May 31, 1994 | May 31, 1995 |
| --- | --- | --- |
| Blank disks | $11,530 | $16,156 |
| Software, manuals, binders, and videos | 85,904 | 106,353 |
| Shipping materials and other supplies | 15,513 | 10,311 |
| Total | [1]112,947 | 132,820 |

[1] The $2 difference between this amount and the $122,945 listed immediately above and below is attributable to rounding.

Diehl reported taxable income of $1,603,678 for its 1995 taxable year. It computed and reported its cost of goods sold as follows:

| | |
| --- | --- |
| Inventory at beginning of year | $112,945 |
| Purchases | 510,898 |
| Cost of labor | 32,260 |
| Commissions | 4,961 |
| Inventory scrap | 17,680 |
| Total | 678,744 |
| Inventory at end of year | 132,820 |
| Cost of goods sold | 545,924 |

Respondent determined that Diehl was required to use an overall accrual method to reflect its income clearly. Respondent

made two positive (increase to income) adjustments to Diehl's reported taxable income to reflect this determination. First, respondent made a $206,108 adjustment under section 481(a) to reflect the effect of the change from the cash method to an accrual method as of June 1, 1994:

|  | Application of cash method | Application of accrual method | Difference |
|---|---|---|---|
| Accounts receivable | -0- | $260,527 | $260,527 |
| Interest receivable | -0- | 38,769 | 38,769 |
| Prepaid expenses | $11,647 | 173,460 | 161,813 |
| Prepaid advertising | -0- | (159,700) | (159,700) |
| Accounts payable | (8,208) | (103,509) | (95,301) |
| Total | 3,439 | 209,547 | 206,108 |

Second, respondent made a $214,309 adjustment to reflect the current year's application of an accrual method to the following items:

|  | Balance on June 1, 1994 | Balance on May 31, 1995 | Difference |
|---|---|---|---|
| Accounts receivable | $260,527 | $522,775 | $262,248 |
| Interest receivable | 38,769 | 7,817 | (30,952) |
| Prepaid expenses | 173,460 | 64,495 | (108,965) |
| Prepaid advertising | (159,700) | (54,240) | 105,460 |
| Accounts payable | (103,509) | (116,991) | (13,482) |
| Total | 209,547 | 423,856 | 214,309 |

## OPINION

Petitioner argues that respondent abused his discretion when he determined that Diehl must change from its hybrid method to an accrual method. Petitioner generally makes four assertions in support of its argument. First, petitioner asserts that the cash method is listed in section 446(c) as a permissible method of accounting and that a taxpayer who consistently uses the cash method may continue to use that method until it fails the $5

million gross receipts exception of section 448. Petitioner claims that Diehl has consistently used the cash method since its inception and that Diehl met the $5 million gross receipts exception for the relevant year. Second, petitioner asserts that a taxpayer meeting the $5 million gross receipts exception may use the cash method whenever its sale of merchandise is not an income-producing factor. Petitioner claims that Diehl primarily earned its income by selling intellectual property, which, petitioner claims, is not merchandise. Petitioner claims that Diehl's sales of the manuals and other inventory items were not an income-producing factor in its business because, petitioner claims, the sales merely helped Diehl sell and market its intellectual property. Third, petitioner asserts that Diehl could use the cash method because its sales of the manuals and other inventory items were insignificant as a function of its gross receipts and that the amount of these items fluctuated little from one yearend to the next. Petitioner claims that it is a per se abuse of discretion when respondent's change in method of accounting generates adjustments to accounts receivable and not to the amount of inventory at the beginning or end of the year. Fourth, petitioner asserts that respondent's determination is an abuse of discretion because Diehl changed to an overall accrual method 2 years after the subject year.

We disagree with petitioner that respondent's determination is an abuse of discretion. Section 446(a) contains the general rule for tax accounting. Section 446(a) provides that the accounting method used to compute taxable income generally must be based on the method of accounting used to compute book income. When the accounting method used to compute taxable income does not clearly reflect income, section 446(b) gives the Commissioner broad authority to prescribe a method that does clearly reflect income. Thor Power Tool Co. v. Commissioner, 439 U.S. 522, 532 (1979); Commissioner v. Hansen, 360 U.S. 446, 467 (1959); see also sec. 1.446-1(a)(2), Income Tax Regs. ("no method of accounting is acceptable unless, in the opinion of the Commissioner, it clearly reflects income"). The Commissioner's exercise of authority under section 446(b) is given "much latitude" and cannot be disturbed unless "clearly unlawful". Thor Power Tool Co. v. Commissioner, supra at 532-533; Lucas v. Am. Code Co., 280 U.S. 445, 449 (1930); see also United States v. Catto, 384 U.S. 102 (1966); Schlude v. Commissioner, 372 U.S. 128, 133-134 (1963); Am. Auto. Association v. United States, 367 U.S. 687, 697-698 (1961); Auto. Club of Mich. v. Commissioner, 353 U.S. 180, 189-190 (1957); Brown v. Commissioner, 291 U.S. 193, 203 (1934). Taxpayers challenging the Commissioner's authority must prove that the Commissioner's determination is

"clearly unlawful" or "plainly arbitrary".[2]  Thor Power Tool Co.
v. Commissioner, supra at 532-533.  The Commissioner's authority
under section 446(b) encompasses overall methods of accounting,
as well as specific methods used to report any item of income or
expense.  Thor Power Tool Co. v. Commissioner, supra at 780;
Prabel v. Commissioner, 91 T.C. 1101, 1112-1113 (1988), affd. 882
F.2d 820 (3d Cir. 1989); sec. 1.446-1(a), Income Tax Regs.

The fact that the Commissioner possesses broad authority
under section 446(b) does not mean that the Commissioner can
change a taxpayer's method of accounting with impunity.  See,
e.g., Prabel v. Commissioner, supra at 1112-1113.  Thus, for
example, if a taxpayer uses a method of accounting that clearly
reflects income, the Commissioner may not require a change to
another method merely because the Commissioner believes that the
latter method will reflect income more clearly.  Ansley-Sheppard-
Burgess Co. v. Commissioner, 104 T.C. 367 (1995); Auburn Packing
Co. v. Commissioner, 60 T.C. 794 (1973); Garth v. Commissioner,
56 T.C. 610 (1971); see also St. James Sugar Coop., Inc. v.
United States, 643 F.2d 1219 (5th Cir. 1981); Photo-Sonics, Inc.
v. Commissioner, 357 F.2d 656, 658 (9th Cir. 1966), affg. 42 T.C.
926 (1964); Bay State Gas Co. v. Commissioner, 75 T.C. 410, 417
(1980), affd. 689 F.2d 1 (1st Cir. 1982).  Likewise, we have

_____

[2] Petitioner asserts mistakenly that respondent bears the
burden of proving that Diehl's use of the cash method did not
clearly reflect income.

allowed the use of an accounting method that was challenged by the Commissioner when the taxpayer's method clearly reflected income and the Commissioner's method did not.  See Rotolo v. Commissioner, 88 T.C. 1500, 1514 (1987).

When a taxpayer challenges the Commissioner's authority under section 446(b), we inquire whether the accounting method in issue clearly reflects income.  The answer to this question does not rest on whether the taxpayer's method is superior to the Commissioner's method, or vice versa.  RLC Indus. Co. & Subs. v. Commissioner, 98 T.C. 457, 492 (1992), affd. 58 F.3d 413 (9th Cir. 1995); Wal-Mart Stores, Inc. & Subs. v. Commissioner, T.C. Memo. 1997-1, affd. 153 F.3d 650 (8th Cir. 1998); see also Brown v. Helvering, 291 U.S. 193, 204-205 (1934).  Nor does the answer rest solely on whether a consistently applied method of accounting is listed in section 446(c) as a "permissible method".  Sec. 446(b) (Commissioner may change any "method used [that] does not clearly reflect income") and (c) ("Subject to the provisions of subsections (a) and (b), a taxpayer may compute taxable income under any of the following methods of accounting" (emphasis added)); see also sec. 1.446-1(a)(2), Income Tax Regs.  Instead, the answer must be found by analyzing the facts and circumstances of the case.  Ansley-Sheppard-Burgess Co. v. Commissioner, supra; Peninsula Steel Prods. & Equip. Co. v. Commissioner, 78 T.C. 1029, 1045 (1982).

A special rule may apply where a taxpayer sells merchandise as part of its ordinary business.  Under section 471(a),

> Whenever in the opinion of the Secretary the use of inventories is necessary in order clearly to determine the income of any taxpayer, inventories shall be taken by such taxpayer on such basis as the Secretary may prescribe as conforming as nearly as may be to the best accounting practice in the trade or business and as most clearly reflecting the income.

Applicable regulations clarify that a taxpayer must account for inventories whenever the production, purchase, or sale of merchandise is an income-producing factor in the taxpayer's business.  Sec. 1.471-1, Income Tax Regs.  Other pertinent regulations mandate that a taxpayer who is required to maintain inventories must use an accrual method with regard to purchases and sales.  See sec. 1.446-1(c)(2)(i), Income Tax Regs.

Section 448 does not displace this special rule.[3]  That

---

[3] Sec. 448 provides:

SEC. 448. LIMITATION ON USE OF CASH METHOD OF
          ACCOUNTING.

    (a) General Rule.--Except as otherwise provided in this section, in the case of a--

        (1) C corporation,

        *    *    *    *    *    *    *

taxable income shall not be computed under the cash receipts and disbursements method of accounting.

    (b) Exceptions.--

        *    *    *    *    *    *    *

        (3) Entities with gross receipts of not
                                (continued...)

section generally prohibits a C corporation from using the cash method. Sec. 448(a)(1). Although section 448(b)(3) provides an exception to this prohibition in the case of a C corporation that satisfies the $5 million gross receipts test of section 448(c)(1), we read nothing in section 448 that provides that a C corporation may use the cash method merely because it meets that exception. In fact, section 1.448-1T(c), Temporary Income Tax Regs., 52 Fed. Reg. 22767 (June 16, 1987), explains clearly the effect of section 448 on section 446(b). That section states:

> nothing in section 448 affects the authority
> of the Commissioner under section 446(b) to
> require the use of an accounting method that
> clearly reflects income * * *. For example, a
> taxpayer using the cash method may be required
> to change to an accrual method of accounting
> under section 446(b) because such method
> clearly reflects that taxpayer's income, even
> though the taxpayer is not prohibited by
> section 448 from using the cash method. * * *

Petitioner also asserts that Diehl did not sell merchandise that was an income-producing factor in its business. We disagree. The term "merchandise" includes any item held for sale. Osteopathic Med. Oncology & Hematology, P.C. v. Commissioner, 113 T.C. 376, 382-383 (1999); see also Wilkinson-Beane, Inc. v. Commissioner, 420 F.2d 352, 354-355 (1st Cir.

---

3(...continued)
more than $5,000,000.--Paragraphs (1) and (2)
of subsection (a) shall not apply to any
corporation or partnership for any taxable
year if, for all prior taxable years
beginning after December 31, 1985, such
entity met the $5,000,000 gross receipts test
* * *.

1970), affg. T.C. Memo. 1969-79.  Merchandise is an income-producing factor whenever its cost is significant to the taxpayer's gross receipts computed under the cash method.  See, e.g., <u>Wilkinson-Beane, Inc. v. Commissioner</u>, <u>supra</u> at 355 (income-producing factor where cost of coffin was included in price of funeral package and represented 15.4 percent and 14.7 percent of cash basis receipts); <u>Knight-Ridder Newspapers, Inc. v. United States</u>, 743 F.2d 781, 790 (11th Cir. 1984) (17.6 percent of total cash receipts suggests that items are an income-producing factor); <u>Thompson Elec., Inc. v. Commissioner</u>, T.C. Memo. 1995-292 (income-producing factor where cost of materials consisted of 37 percent to 44 percent of gross receipts).  Merchandise may be properly characterized as an income-producing factor even if it is not maintained in yearend inventory.[4]  <u>J.P. Sheahan Associates., Inc. v. Commissioner</u>, T.C. Memo. 1992-239.

In the case of Diehl, it manufactured or purchased all of its products, and its sale of those products was its only source of income.  Under the facts at hand, we conclude that Diehl's products were "merchandise" and that Diehl's sale of its merchandise was an income-producing factor in its business.

---

[4] In this regard, we disagree with petitioner that it is a per se abuse of discretion when respondent's change in method of accounting generates adjustments to accounts receivable and not to the amount of inventory at either the beginning or end of the year.  We also disagree with petitioner's assertion that the fluctuation of the amount of yearend inventory is dispositive to our analysis.

Accord <u>Applied Communications, Inc. v. Commissioner</u>, T.C. Memo. 1989-469 (seller of prepackaged software required to use accrual method to report its "software sales"). Petitioner invites the Court to hold that Diehl's primary product was not "merchandise" under section 1.471-1, Income Tax Regs., because it was intellectual property. We decline to do so. Each of Diehl's products generally consisted of a package with manuals and a disk. We believe that where this package is held for sale as an item and imbued with the characteristics which one normally associates with merchandise, it is "merchandise" for purposes of section 1.471-1, Income Tax Regs. Given the fact that most of Diehl's sales involved transfers of tangible products, the purchase and sale of those products required Diehl, on the basis of the record at hand, to use an overall accrual method as determined by respondent.[5]

Petitioners' final argument centers on the fact that Diehl changed from the cash method to an accrual method 2 years after the subject year in order to comply with section 448(a). Petitioner rationalizes on brief that requiring the change in the subject year is "unreasonable, offering no practical benefit to

---

[5] The fact that Diehl's business is product oriented, rather than service oriented, also distinguishes this case from <u>Honeywell v. Commissioner</u>, T.C. Memo. 1992-453, affd. 74 AFTR 2d 5192 (8th Cir. 1994), the primary case relied upon by petitioner. There, the Court held that the taxpayer, a servicer of computer equipment, did not have to inventory the materials which it used in its businesses because those materials were incidental to its service-oriented business. See also <u>Osteopathic Med. Oncology & Hematology, P.C. v. Commissioner</u>, 113 T.C. 376 (1999).

the Government, and is therefore an abuse of discretion." We disagree. The change for the subject year was neither unreasonable nor an abuse of discretion; adjustments to prevent amounts from being duplicated or omitted were specifically required to be made in the first year in which Diehl's method of accounting was changed to an accrual method.[6] See sec. 481(a)(1); sec. 1.481-1(a)(1), Income Tax Regs.; see also Suzy's Zoo v. Commissioner, 114 T.C. 1, 12-13 (2000).

Petitioner has failed to demonstrate that the Commissioner's determination was clearly unlawful or plainly arbitrary. Accordingly, we hold that respondent did not abuse his discretion under section 446 when he determined that Diehl had to change from its hybrid method to an accrual method. All arguments for a contrary holding have been considered and have been rejected as meritless to the extent not discussed.

Decision will be entered

for respondent.

---

[6] Petitioner also notes that the Commissioner had previously examined some of Diehl's earlier returns and had not changed Diehl's use of the cash method on those returns. Petitioner suggests that the Commissioner is estopped from making the sec. 481 adjustment for the subject year. We find this suggestion unavailing. The fact that the Commissioner had the opportunity to, but did not, change an improper method of accounting in an earlier year does not mean that he is estopped from making the change in the later year. See Knight-Ridder Newspapers Inc. v. United States, 743 F.2d 781 (11th Cir. 1984).